SAMUEL SHUMWAY & another *vs.* JOHN H. COLLINS.

A written agreement, made without the lessor's consent, between the assignor and assignee of a lease which contains a covenant against assigning or underletting without such consent, that a third person shall occupy a part of the premises during the term of the lease, on the conditions that he pays rent therefor to the assignee, and " that the said assignee can, by virtue of said lease, allow him to occupy said part without restraint and damage to said assignee, and not otherwise," is in the nature of an underlease to such third person, and entitles him to hold the premises, (especially as against one to whom the lease is subsequently assigned without such consent,) until the lessor enters for breach of covenant, and determines the lease.

The use, for the manufacture of caps, of premises leased " to be occupied for the same purposes they now are," and which were occupied at the time of the lease for the manufacture of carpet bags, is not such an alteration in the occupation as will avoid the lease.

Eviction of a tenant by his landlord from part of the premises demised by a written lease for one entire rent is a bar to any claim by the landlord for rent under the lease.

Whether a tenant, who has been evicted by his landlord from a part of the premises held by him under a written lease for one entire rent, is liable for the use and occupation of the residue, *quære.*

ACTION on the Rev. Sts. *c.* 104, commenced on the 3d of November 1852, after a notice to quit, admitted to be sufficient in form, to recover possession of the fifth story and of one room in the fourth story of a building in Hanover street in Boston.

At the trial in the court of common pleas, before *Hoar*, J., the following facts were in evidence : On the 1st of January 1850, George C. Shattuck made a lease of the four upper stories of this building to Nichols, Irish & Church for the term of five years, for an entire rent; the lessees covenanting not to lease, nor underlet, nor permit any other person to occupy the premises, without the approbation in writing of the lessor. That lease was assigned on the 2d of November 1850 by Nichols, Irish & Church to the defendant, and on the 7th of December 1850 by the defendant to Charles Parsons, who on the same day entered into an agreement in writing with the defendant, the material part of which was thus : " That Curtis C. Nichols shall occupy the chambers over the second floor in said premises during the time said lease is to run; said chambers to be occu-pied for the same purposes they now are ; on condition that the

said Nichols shall well and truly pay to said Parsons rent at" a rate specified; " and also on the condition that the said Parsons can, by virtue of said lease assigned to him, allow said Nichols to occupy said chambers without restraint and damage to said Parsons, and not otherwise." On the 15th of August 1851, Parsons assigned the lease to the plaintiffs, " subject, however, to any rights that Curtis C. Nichols may have by virtue of" said " written agreement." The rights of Nichols under that agreement were assigned to the defendant on the 30th of September 1851. There was no evidence of any assent of Shattuck to any of the assignments, or of any assent of Shattuck or of Parsons to any of the assignments of the rights of Nichols under which the defendant claimed. Nichols was in possession of the chambers in the third story, described in the agreement of Parsons with the defendant, from the time of that agreement until he assigned it. The defendant, when he received that agreement, occupied the premises sued for, and has since occupied only that part of the premises until the commencement of this action. On the 1st of October 1851 the plaintiffs evicted the defendant from the possession of one room in the third story.

The plaintiffs contended that the writing under which the defendant claimed was not valid in his hands. But the court ruled that " the paper executed by Parsons on the 7th of December 1850 was a valid lease to Nichols of the three upper stories, and gave the defendant the right, on the 30th of September 1851, to the occupation of the premises according to the terms of that paper; and further, that if the premises were vacant or not, or not in any possession adverse to the defendant on the 30th of September 1851, the assignment to the defendant on that day, he being in possession of a part of the premises described, would vest in him the possession of the whole.

It appeared that the back room of the fourth story was used, at the time of the execution of that paper, for manufacturing carpet bags; but that some time afterwards it was used by other parties for manufacturing caps. The plaintiffs contended that this change of purpose gave them a right to enter and take

possession thereof. But the court ruled "that the change from manufacturing carpet bags to manufacturing caps was not such a change of purpose as constituted a breach of the instrument, or gave the plaintiffs a right to enter; and did not affect the defendant's title."

The plaintiffs contended that the defendant was liable to pay the rent of the premises in his occupation, although only a part of what was originally demised. But the court ruled "that if the plaintiffs entered and evicted the defendant from part of the premises, after the defendant was in possession of the three upper stories, without the defendant's consent to a severance or an apportionment of the rent, although the defendant continued to occupy a part of the premises, he would be under no obligation to pay any rent as long as the eviction continued."

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions, which were argued at March term 1855

*D. H. Mason*, for the plaintiffs.

*I. Story, Jr.* for the defendant.

BIGELOW, J. This is a process under the Rev. Sts. *c.* 104, § 4, by which the plaintiffs seek to recover possession of the premises in controversy, on the ground that the defendant holds the same, without right, after a legal termination of his tenancy. The title of the plaintiffs is derived through sundry mesne assignments from the lessees of George C. Shattuck, who originally demised the entire estate, of which the premises in dispute are a part, for a term of five years from the first day of January 1850. The defendant claims to hold possession by virtue of an agreement or underlease, made by Parsons, an intermediate assignee of said lease, bearing date December 7th 1850, by which a certain portion of the entire demised estate was underlet to Nichols, who subsequently assigned his right to the defendant.

There being no proof of a forcible entry or detainer, the only ground, under the statutes of this commonwealth, on which the plaintiffs can maintain this action is, that the relation of landlord and tenant has subsisted between them and the defendant; and that the tenancy has been determined by its own limitation, or by a notice to quit, according to the provis-

ions of the Rev. Sts. *c.* 60, § 26; *c.* 104, § 4; and *St.* 1847, *c.* 267, § 1.

In order to prove their case, and establish their title to the possession of the premises in controversy, the plaintiffs relied, at the trial, on the lease from Shattuck, which was assigned to them by Parsons. By the terms of this assignment, it appears that they took the estate expressly subject to the right of Nichols to occupy a part of the premises under the agreement previously made with Parsons. The plaintiffs are therefore estopped to deny the right of Nichols to occupy the premises in controversy according to the terms of the agreement with Parsons. By taking the assignment of the lease, subject to the right of Nichols, and now claiming possession under it, they have recognized the validity of that right. The agreement with Nichols, being in the nature of an underlease, was clearly assignable in law, and having been duly transferred by Nichols to the defendant, conferred on him a valid title to the occupancy of the premises, as against the plaintiffs, according to the stipulations therein contained. Com. Landl. & Ten. 51.

The plaintiffs were therefore bound to show that the right of the defendant to occupy the premises under this agreement was at an end. To do this, they relied, at the trial, on several distinct grounds. The first was, that the original lease from Shattuck contained a covenant that the lessees should not underlet the premises demised, or any part thereof, without the consent of the lessor in writing; and that, for a breach of said covenant, the lessor had a right to enter and expel the lessees and those claiming under them; and, in the present case, no such consent being shown, that the defendant had no right to occupy the premises. This argument cannot avail the plaintiffs, because their own title depends on an assignment of the same lease, made without any consent of the lessor. But a better answer to it is, that this covenant was made solely for the benefit of the lessor or his assigns, and he or they only can take advantage of it, and terminate the estate demised by an entry for breach of the condition. No such entry being shown, the lease still subsists in full force, and the estates existing under it continue according to the terms of their creation.

The plaintiffs further contended that the right of the defendant to occupy the premises had been determined, for the reason that the premises were used for a purpose different from that to which they were appropriated at the time of the agreement between Parsons and Nichols, by which they were demised "to be occupied for the same purposes they now are." Admitting, for the sake of the argument, that, under this clause in the underlease, a change of occupation would defeat the right of the defendant to hold the premises, (which is by no means clear,) we think the evidence falls very far short of proving such an essential and substantial alteration in the mode of use, as to constitute a breach of the agreement, and warrant a verdict for the plaintiffs on this ground.

The only remaining ground on which the plaintiffs relied to maintain their suit was, that the right of the defendant to occupy the premises was terminated by a failure to pay rent, and by a notice to quit, given according to the provisions of the statutes before cited. But we think the plaintiffs fail to bring their case within any of those provisions. It is clear that the defendant was not a mere tenant at will. He occupied the premises by virtue of a written lease, which was, as has been already shown, valid between him and the plaintiffs. The only question therefore is, whether he is liable to this process, under *St.* 1847, *c.* 267, § 1, for the reason, that he has neglected or refused to pay rent according to the terms of this written lease. Clearly he is not. By the wrongful act of the plaintiffs, he has been evicted from a part of the premises demised to him. This has been found by the jury, under instructions to which no exception is taken.

We do not deem it necessary to determine whether, according to the ruling of the judge at the trial, and in conformity with many of the authorities, an eviction extinguishes all claim for rent; Bac. Ab. Rent, L.; *Morrison* v. *Chadwick,* 7 C. B. 283; *Upton* v. *Townend,* 17 C. B. 30; *Christopher* v. *Austin,* 1 Kernan, 216; Smith on Landl. & Ten. 202; or whether, as has been sometimes said, after an eviction, a tenant is liable on a *quantum meruit,* for use and occupation of such part of the premises as was

actually occupied by him subsequent to the eviction. *Stokes* v. *Cooper*, 3 Campb. 514, *note.* *Smith* v. *Raleigh*, ᴜ Campb. 513. *Grand Canal* v. *Fitzsimons*, 1 Hudson & Brooke, 449. Smith on Landl. & Ten. 307. The decision of this case does not depend on the determination of that question. All the authorities concur in declaring that a lessee is not liable to pay the rent stipulated by his lease after an eviction by his landlord. The agreement, in a lease, to pay rent is entire, in consideration of the demise of the whole estate ; and it cannot be severed or apportioned by an eviction of part of the premises by the tortious act of the landlord.

After the eviction therefore in the present case, there was no wrongful refusal or neglect by the defendant to pay rent, according to the terms of the written lease under which he held the premises in controversy. To any claim for rent under this lease, the eviction by the plaintiffs was a legal and sufficient answer. The defendant, after his eviction from a part of the premises by the plaintiffs, had a right to continue in the occupation of the residue, though not bound to do so ; and, while he so occupied, he was in, not as a tenant at will, but under his written lease. The plaintiffs could not, by their own wrongful act, change the tenure by which the defendant occupied the residue of the premises. His lease was not terminated by its own limitation ; he was not liable to a notice to quit for nonpayment of rent, as a tenant at will ; nor for having neglected or refused to pay rent according to the terms of his written lease. The plaintiffs therefore failed to bring their case within any of the provisions of law by which this process is prescribed as a remedy to restore landlords to the possession of estates withheld wrongfully by their tenants.                    *Exceptions overruled.*