## CROMMELIN *vs.* THIESS & CO.

[ACTION UNDER CODE FOR USE AND OCCUPATION OF LAND.]

1. *Implied renewal of lease.*—A yearly tenant, holding over after the expiration of his term, is presumed, in the absence of evidence to the contrary, to hold under the terms of the original lease ; but this presumption may be rebutted by proof of a new agreement, materially different from the original contract, although such new agreement is void under the statute of frauds because not reduced to writing.

2. *Statute of frauds as to contracts not to be performed within one year.*—A parol agreement for a lease, for the term of one year, to commence at a future day, is void as a contract under the statute of frauds ; yet it may be looked to, to explain the subsequent holding of the premises, and to show that it was not upon the terms of a prior valid lease.

3. *Tenancy at will.*—A yearly tenant, holding over after the expiration of his term, under a void parol agreement, is a mere tenant at will, whose tenancy may at any time be determined by quitting the premises, or by a demand of possession on the part of his landlord.

4. *Damages in action for use and occupation.*—In an action for use and occupation, against one who has entered under an agreement for a term, a recovery may be had for the rent of the entire term, although he quitted the premises before the expiration of the term ; but a mere tenant at will, who had no term vested in him, is only liable for the value of his actual occupation.

5. *Tenant's right to sub-let.*—In the absence of a stipulation to the contrary, a tenant has the right to sub-let the premises to another, to be used in any manner not inconsistent with the terms of his own lease.

6. *Breach of contract, and waiver.*—Any interference by the landlord with his tenant's right to the enjoyment of the premises, to the full extent secured by the lease, authorizes the tenant to abandon the premises, and exonerates him from the payment of rent ; but, if the tenant fail to abandon the premises within a reasonable time, or does any act inconsistent with the right to abandon, he thereby waives that right.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Charles Crommelin, against B. S. Thiess & Co., to recover $500 for the use and occupation of a storehouse in the city of Montgomery, "from the 1st October, 1854, to the 1st April, 1855"; and was commenced on the 18th April, 1855. In consequence of the rulings of the court on the trial, the plaintiff was compelled to take a nonsuit, which he now moves to set aside;

assigning as error the several rulings of the court, to which he reserved exceptions, and which are thus stated in the bill of exceptions:

"The plaintiff offered evidence tending to show that the defendants, who were druggists in the city of Montgomery, leased his store in said city, from the 1st October, 1853, to the 1st October, 1854, for $1,000, payable quarterly; that, previous to the expiration of said lease, they made a parol contract with him to lease said store for another year, to commence from the 1st October, 1854, for $1,000. The proof did not show that the defendants were restricted to the use of said store as a drug-store, when they leased the same at the times severally above stated. The proof further showed, that during the summer of 1853, and prior to the expiration of the first lease aforesaid, the defendants had agreed to underlease said store to one Joseph, to be used as a grocery-store; the tenancy of said Joseph to commence on the 1st October, 1854, and to continue for one year, that being the term of defendants' second lease from plaintiff. The evidence tended to show, that on the faith of said agreement between defendants and said Joseph, and in consideration thereof, the defendants had agreed to lease another store from said Joseph, to be used and occupied as a drug-store; that after this agreement was made between defendants and said Joseph, and before the 1st October, 1854, when the tenancy of said Joseph was to commence, plaintiff was informed by said Joseph of said agreement, (defendants not being present,) and thereupon objected to the same, and said that his store should not be used as a grocery-store; that subsequently, to-wit, about the last of September, or the first of October, 1854, plaintiff, defendants and said Joseph all being present, defendants told plaintiff that they had sub-let said store to said Joseph, as aforesaid, to be used as a grocery-store; that plaintiff replied, that said store should not be used as a grocery-store, and forbid said Joseph to occupy it as a grocery-store; that defendants then said to plaintiff, 'You may take your store, and rent it yourself'; and that plaintiff replied, 'That is not for us to determine —the law must settle it'. The proof further showed, that

defendants, soon afterwards, commenced removing from plaintiff's store, and, pursuant to said agreement between them and Joseph, removed to said Joseph's store; that they completed the removal of all their medicines, drugs, &c., during the month of October, 1854, and actually occupied plaintiff's said store until their removal as afore-said, which was about one month after the termination of their first lease; that plaintiff's store, after it was thus vacated, remained vacant and unoccupied, until the 1st October, 1855; that one Nettles applied to defendants, in December, 1854, or January, 1855, to rent said store; that defendants, having the keys of the same, showed the store to said Nettles, offered to rent it to him until the 1st October, 1855, and told him that they had the control of it during that time; that said Nettles did not rent the same; that the keys were retained by defendants, until September, 1855, and were then delivered to a third per-son, to be given to plaintiff, which was done in October, 1855. There was no proof that plaintiff, before that time, ever demanded said keys, or attempted to obtain the pos-session of said store; nor was there any proof, except as hereinabove stated, that defendants ever attempted to control said store, from the time when they vacated it as aforesaid, up to the 1st October, 1855.

"Upon this evidence, the court charged the jury,—

"1. That if the proof showed that the second contract between plaintiff and defendants, for the lease of said store, was a parol contract, and was not to be performed within one year from the time of the making thereof, the same was void under the statute of frauds.

"2. That if the defendants leased said store, from the 1st October, 1853, to the 1st October, 1854, for $1,000, payable quarterly; and continued to occupy said store after the 1st October, 1854, the law implied a renting from the 1st October, 1854, to the 1st October, 1855, on the same terms as for the previous year.

"3. That if there was no agreement between the parties that the store should not be used or sub-let for a grocery-store, the defendants had the right to sub-let it to be used for that purpose.

"4. That if the plaintiff, on being notified that defendants had sub-let the store, from the time they moved out, from the 1st October, 1854, to be used as a grocery-store, forbid their sub-letting it for that purpose, and forbid the sub-tenant from using it for that purpose,—this conduct on the part of the plaintiff authorized the defendants to terminate the lease; and an offer on their part to give back the store to the plaintiff would, in law, terminate the lease, although refused by him; and, in that event, plaintiff could only recover the rent for the time that the defendants were actually in possession of said store.

"The plaintiff excepted to the fourth charge, and then requested the following written charges:

"1. That if the jury believe that the defendants rented plaintiff's store, from the 1st October, 1853, to the 1st October, 1854, for $1,000, payable quarterly; and that the defendants held over after the 1st October, 1854, then the law implies a renewal of the lease, from the 1st October, 1854, to the 1st October, 1855, on the same terms as from the 1st October, 1853, to the 1st October, 1854.

"2. That if the jury find the facts as stated in the first charge requested; and, further, that defendants agreed to sub-let the store to Joseph, as a grocery-store, from the 1st October, 1854, until the 1st October, 1855; and that plaintiff forbid defendants from doing so, and forbid said Joseph from taking the store as such sub-lessee; and that defendants thereupon offered said plaintiff back his store, and he refused to take it,—that this would not, in law, be a surrender of the lease.

"3. That if the jury find the facts as stated in the first instructions asked; and, further, that defendant agreed to sub-let the store, from the 1st October, 1854, to the 1st October, 1855, to be used as a grocery-store; and that plaintiff, on such agreement being communicated to him, forbid the same, and forbid Joseph from taking the store as such sub-lessee; and that defendants thereupon replied, that he might take his store, and rent it for himself; and that plaintiff replied, that it was not for them to determine that, and that the law would determine it,—that the offer to surrender by the defendants, under such circum

stances, would not exonerate them from the payment of the rent from the time of such offer.

"4. That upon the same state of facts stated in the third charge requested, the interference on the part of plaintiff would not be such as to deprive him of the right to recover rent from the time of such interference.

"5. That if the jury find the facts as stated in the fourth charge requested; and, further, that after plaintiff's interference as therein stated, and after defendants' reply, that he might take his store, &c., defendants afterwards retained the possession of said store, until the latter part of October, 1854; and, in December or January of the same year, offered to rent it, and retained the keys until September, 1855,—then they would not be entitled to set up plaintiff's interference against the payment of rent.

"The court gave the first instructions requested, and refused the others; and to their refusal the plaintiff excepted."

GOLDTHWAITE & SEMPLE, for the appellant.—1. The court erred in the fourth charge given, and in the refusal of the second, third, and fourth charges asked. Crommelin's interference, in the manner stated, would not have amounted to an eviction, even if Thiess & Co. had vacated the premises within a reasonable time thereafter. If the defendants had the right to sub-let, that right could not be in any wise affected by the plaintiff's forbidding its exercise. It might as well be said, that the landlord's forbidding the tenant to make a fire, or keep a light after a certain hour in the night, would amount to an eviction, if the tenant vacated the premises. The rent could only be extinguished, or suspended, by the agreement of the parties, by surrender, or by eviction; and to constitute an eviction, some actual disturbance of the possession must be shown.—Hunt v. Cope, Cowper, 242; 1 Saund. 204; Fisher v. Milliken, 8 Barr, 111; 2 Saund. Pl. & Ev. 287; Esp. Ev. 239; 5 Johns. 120; 15 Johns. 483; 5 Hill, 52; 4 Rawle, 339. But, conceding that the plaintiff's interference as stated would have justified the defendants in quitting the premises, the charge of the court is still erro-

neous; for it asserts, that such wrongful interference on the part of the plaintiff, coupled with the defendants' offer to give up the store, terminated the lease; thus leaving out of view another material fact, viz., that the defendants must have abandoned the premises in consequence of the plaintiff's interference.

2. The facts stated in the last charge requested, relative to the defendants' retention of the premises after the plaintiff's interference, and their offer to rent the store to Nettles, amount to a waiver of the plaintiff's interference. 4 McLean, 530; 6 Johns. Ch. 469; Addison on Con. 657; Martin v. Everett, 11 Ala. 375.

WATTS, JUDGE & JACKSON, *contra.*—1. The parol agreement to rent the premises was clearly void under the statute of frauds.—Chitty on Contracts, 67, 68, 319–20. The contract being void, the subsequent conversation between the parties, ending in the offer of defendants to give up the store, was a surrender of any right which they had under the parol agreement, even if it were not sufficient to constitute a surrender of a valid written lease. Crommelin's interference was illegal, and authorized the defendants to abandon the contract.—Davis v. Wade, 4 Ala. 208; Magee v. Billingslea, 3 Ala. 680; Pharr & Beck v. Bachelor, 3 Ala. 245; Martin v. Chapman, 6 Por. 344; Perry v. Hewlett, 5 Porter, 325; Cohen v. Dupont, 1 Sandf. S. C. 260; 4 Leigh, 484.

2. The fifth charge asked by the plaintiff was properly refused, 1st, because it excluded some of the facts from the consideration of the jury; 2d, because it would have authorized the jury to give the plaintiff rent for the whole year, when he only claimed to the 1st April; and, 3d, because the facts stated did not authorize the legal infer ence sought to be drawn.

3. The complaint is for actual use and occupation. There is no count upon any lease, nor for the breach of any lease. The charges asked, being all predicated on the idea that the suit was on a lease, ought to have been refused, even if otherwise unobjectionable.

RICE, C. J.—The most important question for consideration is, on what terms shall the defendants be considered as holding after the expiration of the first lease.

If there was no evidence explanatory of the holding over after the expiration of that lease, the case would be a plain one for the plaintiff. For it is a settled rule, that where a party, having held under a lease for a year, at a certain rent, continues to occupy after the expiration of his term, it is presumed, *if there be no evidence to the contrary*, that he holds for the time, and on the terms of the original lease. But here we have evidence to the contrary; and in a case like the present, "the terms on which he continues to occupy are matter of evidence, rather than of law."—Mayor of Thetford v. Tyler, 8 Ad. & Ellis, (N. S.) 95; Chitty on Contracts, (edition of 1851,) 287, and authorities cited in note (*m*;) Diller v. Roberts, 13 Serg. & Rawle, 60.

Here it appears that, not long before the expiration of the original lease, the parties made a new contract for a second year, to commence from the 1st day of October, 1854. The new contract was materially different from the original lease, in this, that the new contract does not, like the original lease, provide for *quarterly* payments. The law is, that rent from a yearly tenant is payable *yearly*, unless otherwise agreed.—Chitty on Contracts, 284, note (*t.*) The new contract, thus made, and thus differing from the original lease, destroys the implication of the renewal of the original lease, from an unexplained holding over. That new contract is void as a lease by the statute of frauds, because it was verbal, and was not to be performed within a year from the making thereof, (Code, § 1551; Chitty on Con. 67;) yet it was good evidence to explain the holding over, and to show that it was not upon the terms of the original lease.—Chitty on Con. 283, note (*q.*) It shows *that*, but is not operative to create any title of tenancy. The other circumstances set forth in the bill of exceptions, which occurred between the making of the new contract and the day in October on which the defendants completed the removal of their drugs, &c., from the store, very plainly show, that the holding over

was really not upon the terms of the original lease. In fact, it is clear from all the evidence, (if it is believed,) that after the expiration of the original lease, the defendants did not hold under any *valid* express agreement, nor upon the terms of the original lease; that they were in by no title of tenancy whatever, but held at the will of the plaintiff, in the strictest sense of the word; and that he, on any day after the termination of the original lease, whilst they continued in possession, might, by a demand of possession, have determined the will, and thereupon have instituted against them what the Code calls "a real action," in which he could have recovered, not only the store itself, but damages "for the possession, or use and occupation," "to the time of the verdict."—Code, § 2207; Doe, *ex dem.* Hollingsworth v. Stennett, 2 Esp. 717; Goodtitle v. Herbert, 4 Term R. 680; Doe, *ex dem.* Bastow v. Cox, 11 Ad. & Ellis, N. S. 122.

It may be true, that if at any time after the holding over commenced, and before it terminated, the plaintiff had received from the defendants rent, as rent, for any portion of that time, or had done any other act, which, in law, would have amounted on his part to such a recognition of the defendants as his tenants, as to have precluded him from recovering against them in such a "real action" as we have above mentioned, then he might, in such an action as the present, treat them as tenants from year to year. But nothing of that kind appears to have been done; and we need not therefore now decide what its effect would have been, if it had been done.—See Chitty on Con. 287, and other authorities cited, *supra*. *In the absence of any thing of that kind,* the defendants could not, by *their mere act,* (such as retaining the keys, and offering to rent the store to Nettles,) *vest in themselves a term as yearly tenants,* nor incur the liabilities of such tenants for rent.

Upon the evidence, (if it be true,) the defendants held, after the expiration of the original lease, as tenants at will, and had the right to determine their holding by quitting the premises.—Addison on Contracts, (edition of 1857,) 342, 343.

If it were conceded that the defendants, after the expiration of the original lease, held as yearly tenants, the concession would be fatal to the present action; because, upon that concession, the suit was commenced, and the complaint filed, *before the expiration of the year*, and *before any rent* could have been considered as due for that year.

As the case for the plaintiff is now presented by the evidence, it rests only upon "a principle resulting from the nature of an action for use and occupation, (and sanctioned by section 2206 of the Code,) namely, that he who holds my premises, without an express bargain, agrees to pay what a jury may find the occupation to be worth." Mayor of Thetford v. Tyler, *supra;* Addison on Con. 371; Abeel v. Radcliff, 15 Johns. R. 507. " An actual personal occupation is not necessary to sustain the action, when the lessee (that is, a tenant for a term under an agreement) has entered and taken possession, and *the term has become vested in him*, as he 'holds' within the words of the statute, (Code, § 2206,) although he does not occupy." For, as against *such a tenant*, who has once entered, and become vested with the term, a recovery of the rent for the entire term may be had, without any other proof of use and occupation than such entry by him, although it may appear that he afterwards quitted the premises long before his term expired.—Addison on Con. 371, and note (*i*,) referring to Baker v. Holtpzaffel, 4 Taunton, 45, and other cases. But, as against a mere tenant at will, who has no term vested in him, who has made no express agreement, who had the right to determine his holding by quitting the premises, and who has exercised that right, the owner of the premises can not recover more than the actual occupation was worth, in an action for use and occupation; although, if he had elected, during the occupation, to have brought a "real action," he might, in it, have recovered damages for the use and occupation to the time of the verdict.

But, if it were conceded that the holding over of the defendants was as tenants from year to year, and that the yearly term had become vested in them; still it is clear that the said term could lawfully be created, and was

created, without writing. It might, therefore, be terminated without writing.—Addison on Con. 386. There was no stipulation, or agreement, that the store should not be used as a grocery-store, nor that it should not be sub-let. The tenants had, therefore, the right to sub-let it as a grocery-store, and to the quiet enjoyment of the store, either by personal occupation, or by the exercise of that right; and any interference by the landlord, which deprived them of the right of enjoyment of the store to the full extent secured to them under the lease, would authorize the tenants to abandon the premises, and thereby exonerate themselves from the liability to pay rent imposed upon them by the contract. But, if they failed to abandon within a reasonable time, or did any act inconsistent with the right to abandon, they would thereby waive that right.—Dyett v. Pendleton, 8 Cowen, 727; Lawrence v. French, 25 Wend. 443; Jackson v. Eddy, 12 Missouri Rep. 209; Burn v. Phelps, 1 Starkie's R. 94; 6 T. R. 458; Edwards v. Etherington, Ryan & Moody, 268.

Under the views above presented, it is certain that the 4th charge of the court could not have injured the plaintiff *in this action.* Construing that charge in connection with the evidence, we understand "the lease" which it mentions, to be the verbal lease which we have above declared void. As that lease was void by the statute of frauds, and the defendants had the right to treat it as a void lease, the plaintiff could not have been injured, but might have been benefited, by the instruction which made the right of the defendants to terminate it dependent on the interference of the plaintiff, and their offer to give back the store. That lease did not *vest any term in the defendants.* And as we understand that charge to relate only to it, we cannot say that there was any error in that part of it, which limited the recovery of "the rent" to "the time that defendants were actually in possession of said store." If retaining the keys, and offering to rent to Nettles, amount to a continuation of the holding of the store by the defendants, (as to which we do not decide,) they amount to a continu-

ation of the *actual* possession of the store, and would, therefore, have been embraced in the charge as given.

The 1st charge asked was given. The 2d was abstract; and, therefore, there was no error in refusing it, even if otherwise unobjectionable. The 3d, 4th and 5th *assume* that the plaintiff had made out at least a *prima-facie* case, and must recover unless defeated by the matters stated in them respectively. That *assumption* alone authorized their refusal, even if in all other respects they were faultless. There never is error in refusing a charge, which is not, in every particular, authorized by the law and justified by the evidence in the particular case.—Carmichael v. Brooks, 9 Porter, 330.

We find no reversible error in this case, and must affirm the judgment.