[Maddox v. Westcott, et al.]

# Maddox *v.* Wescott, *et al.*

### *Unlawful Detainer.*

(Decided June 18, 1908.   47 South. 170.)

1. *Landlord and Tenant; Tenant for Years; Right to Sub-lease.*—A tenant for years is the owner of a well defined interest or estate in land and may sub-lease the premises or any part thereof, unless restrained by the covenants or conditions of the lease.

2. *Same; Waiver of Right of Lessor.*—A stipulation in a lease that the lessee shall not sub-lease the premises without the written consent of the lessor, is for the benefit of the lessor, and may be waived by parol.

3. *Same; Revocation of Waiver.*—Where a lessor orally consented to a sub-lease by the lessee of the premises, the fact that the lessor was advised over the phone that the sub-lessee desired a written consent to conform to the conditions of the lease, and the lessor stated that he would see the lessee on a subsequent day, was not a revocation of the oral consent to the sub-lease.

4. *Same; Purpose of Sub-Lease.*—Where the lease did not contain a stipulation against the use of the premises for a restaurant, and the lessor consented to a sub-leasing without being informed as to the purpose for which the sub-lessee would use said premises, the lessee could sub-lease them for restaurant purposes.

5. *Consent to Sub-lease; Consideration.*—Where lessors of premises consented to a sub-lease, and, on the faith of the consent, the lessee bound himself to sub-lease and upon objection by the lessor to the use of the premises for the purpose of the sub-lease, the lessee offered to prevent the sub-lessee from taking possession, if the lessor would hold him harmless against a breach of his contract for sub-leasing, which proposition the lessors ignored, such lessors cannot complain of a want of consideration for their consent in the first instance.

6. *Same; Evidence.*—The evidence stated and examined and held insufficient to show that the lessee resorted to any unfair practices to obtain the lessor's consent to a sub-leasing.

7. *Unlawful Detainer; Co-tenant; Recovery.*—Where one of several co-tenants is not entitled to recover in an action for unlawful detainer, none can do so.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Suit by M. W. Westcott and others against T. J. Mattox in unlawful detainer, for breach of contract of lease,

[Maddox v. Westcott, et al.]

the facts of which are sufficiently stated in the opinion of the court. From a judgment for plaintiff defendant appeals. Reversed and rendered.

J. M. CHILTON and P. H. STERN, for appellant.— Where the tenant violates the terms of a lease to the injury of the landlord, the latter may recover full compensation in damages in a suit for breach of condition.— 18 Am. & Eng. Ency. L., 269-70, and cases there cited. As the landlord has the means to fully indemnify himself, the law does not favor the adoption of the harsher method of forfeiting the lease with its consequent injury of the lessee. The law does not favor forfeiture and this rule applies strictly to leases.—18 Am. & Eng. Ency. L., p. 371, and cases there cited. It is in view of this principle that the language of a lease is construed most strongly against the lessor and in favor of the lessee and which requires that the landlord should bring himself strictly within some express condition of the lease before he can enforce a forfeiture. It is accordingly held that a lease that prohibits sub-letting will not authorize a re-entry even though it provides a forfeiture, unless there is an express condition that the lessor shall have the right to re-enter for the violation.—18 Am. & Eng. Ency. L., pp. 369-70; Taylor on Landlord and Tenant. Although the lease provides against sub-letting without the written consent of the landlord, this is a condition which he may waive by parol, as it was inserted for his benefit.—*Anderson v. Tucker,* 127 Ala. 602; *Winchester v. Attalla,* 102 Ala. 184; 18 Am. & Eng. Ency. L., 681; 24 "Cyc." 912 and cases there cited; Jones, Landlord & Tenant, Sec. 496; *Welshroes Case,* 25 Misc. N. Y. 485. Even in the absence of express consent it is held that "if a departure from the terms of a lease for which a forfeiture is claimed is with the acquiescence of the landlord,

or is caused by the conduct of the landlord, which reasonably induces the tenant to believe that the landlord does not intend to enforce a forfeiture in case of such departure, the landlord will be held estopped to assert a cause of forfeiture."—18 Am. & Eng. Ency. 383, 681; Jones, Landlord & Tenant, 576; *Wingo v. Hardy,* 94 Ala. 194. In Jones L. & T. Sec. 496 it is said: "If one party to a contract intentionally by language or conduct leads the obligor to believe that he need not perform promptly and that no advantage will be taken of the failure, it is equivalent to an express agreement to that effect, and is a waiver of forfeiture. If the landlord with knowledge of a ground of forfeiture, accepts rent covering any period of the time during which the forfeiture is claimed to have existed, he waives the forfeiture by such acceptance.—18 Am. & Eng. Ency. L., p. 382, 385, and numerous cases cited; Jones L. & T. Sec. 497; *Dahm v. Barlow,* 93 Ala. 120; *Brooks v. Rodgers,* 99 Ala. 433; *Winchester v. Attalla,* 102 Ala. 194; *Bowling v. Crook,* 104 Ala. 130; *Dumatt's Case,* 1 Wal. 61. An analogous principle runs through all the law. One cannot rescind a contract for fraud if he treat it as in existence after knowledge of the ground of rescission.—*Allen v. Stapleton,* 123 Ala. 439. Or if a vendor, time being of the essence of the contract, accepts payment after the time. —24 "Cyc." 1363-4.

HILL, HILL & WHITING for appellees.—The express provision of the lease is for a forfeiture if its provisions are violated.—24 Cyc. 1350. Misrepresentations or fraud cannot be relied upon by the party making them as an estoppel.—*Dangefries v. Atchison,* 62 Kan. 86; & A. & E. Ency. Law, (1st Ed.) 16. Mattox is estopped from relying on the consent given.—16 Cyc. 771 and 748.

[Maddox v. Westcott, et al.]

Waiver with knowledge is not shown.—*Bolling v. Crook,* 104 Ala. 139; *Brooks v. Rogers,* 99 Ala. 139; 24 Cyc. 1361.

DENSON, J.—As the owner of a well-defined interest or estate in lands, a tenant for years, unless restrained by the covenants and conditions in his lease, may under-let the premises, or any part of them.—1 Washb. on Real Prop. (4th Ed.) 517; 4 Kent. Com. 96; 24 Cyc. 962; *Nave v. Berry,* 22 Ala. 382; *Crommelin v. Thiess,* 31 Ala. 412, 421, 70 Am. Dec. 499. In the lease presented in this case is the following clause: "And the said party of the second part (lessee) are to commit no waste of property, but, on the contrary, take good care of the same, and, further, not to underlease the said property, without the written consent of the said parties of the first part under penalty of forfeiture and damages, and, further, this agreement being terminated, to surrender the quiet and peaceful possession of the same, in like good order and condition as at commencement of said term, as reasonable use and wear thereof will permit." It is conceded that the tenant sublet a part of the store rented to Poulos & Brown for use as a restaurant; and it is admitted that the oral consent was given by Baldwin Wescott to the tenant prior to the making of the sub-contract thereto. But it is insisted, first, that oral consent does not answer the terms of the lease, and that it cannot take the place of written consent; second, that the consent was procured without information being given the landlord that the persons to whom the sub-lease would be made desired to establish a restaurant in the store, and that good faith required such information to be imparted, and in the absence of it the consent given was ineffective.

Although consent to subrent is required by the contract to be given in writing, this is for the benefit of the lessors; and it seems to be a well-established principle that it may be waived by parol, and that, if parol consent is established to the reasonable satisfaction of the court or jury trying the cause, it will work a waiver of the stipulation requiring written consent.—*Benson v. Suarez,* 43 Barb. (N. Y.) 408, 19 Abb Prac. 61, 28 How. Prac. 511; *Dierig v. Calahan,* 35 Misc. Rep. 30, 70 N. Y. Supp. 210; *Weisbrod v. Dembosky,* 25 Misc. Rep. 485, 55 N. Y. Supp. 1; *Prevost v. Holland,* 15 Que. Sup. Ct. 298; *Cordner v. Mitchell,* 9 L. J. Jur. 319. The tenant on the 5th of March, 1907, addressed the following letter to the lessors: "Mrs. M. A. Wescott & Sons, City—Dear Madam and Sirs: I have opportunity to lease a portion of store No. 31 Commerce street that is now leased to me by you, and I kindly ask you to please give your consent. Yours truly, T. J. Mattox." This letter was sent to the home of the lessors on the afternoon of March 15th, but Baldwin Wescott, the person who represented all the lessors, and who attended to the leasing and to the collection of rents for them, not being at home, no reply to the letter was sent. Later in the afternoon of the same day, Mattox (lessee) called Baldwin Wescott over the phone, and asked him if he had received his note. Wescott replied that he had. Mattox then inquired if he would consent for him to sublet a part of the house, as requested in the letter. Wescott replied that he had no objection. Mattox then asked him to put the consent in writing, and Wescott answered that "it was no use." Mattox then stated to him that it would be necessary to run a partition lengthwise about the center of the sore, and Wescott consented to this. Mattox did not state to what use the store would be put, nor did Wescott make any inquiry of him in that regard. On Saturday after-

noon (the 16th day of March) Mattox and the parties
to whom he had agreed to subrent were in the office of
an attorney to have prepared and to execute the sub-
lease contract, when one of the sublessees expressed the
preference that Mattox should have Wescott's written
consent to the sublease. Mattox thereupon called West-
cott over the phone and communicated to him the prefer-
ence of his lessee, asking him if he would put his consent
in writing. Westcott replied that he had already con-
sented to the making of the sublease, and that he saw no
reason for its being in writing—that it was wholly un-
necessary. Mattox then stated that his parties pre-
ferred it, and Wescott testified that he replied: "I will
be down to your store to see you about it Monday morn-
ing." Poulos and Brown (the sublessees) heard Mat-
tox's conversation over the phone, and when it was con-
cluded the sublease contract was executed. Westcott
testified that he did go down, on Monday, to Mattox's
store, but that Mattox was not in, and he did not see him.

On these facts, which are shown without conflict in
the testimony, we cannot perceive that any unfair prac-
tice was resorted to by Mattox to obtain Wescott's con-
sent. He made no false statement, no misrepresenta-
tion, nor was anything concealed by him in his conver-
sation with Wescott. Besides, Wescott had full oppor-
tunity to inquire the names of the parties to whom the
lease was to be made and the purposes to which the
store would be devoted. There is nothing to show that
Mattox resorted to any means, foul or fair, to prevent
or suppress such an inquiry. If it had been made, no
doubt can be entertained—or, at least, we can see no
cause for doubt—that it would have elicited the infor-
mation which Wescott now insists was suppressed. In
this connection let us suppose that, in reply to the let-
ter sent by Mattox to Wescott, Wescott had written just

C 32

what he testified he said to Mattox through the phone; could it then be said that the consent given in such written reply was procured in bad faith, because Mattox did not state in his letter the purposes for which the store would be used by the subtenants? If so, we confess we cannot perceive upon what ground the predicate could be rested. Wescott knew when he read the letter that the names and purposes were not given; but there was nothing in the letter to beguile him from making inquiry in respect to them, neither was there anything of that nature in the conversations had over the phone. On the contrary, Mattox's statement to the effect that it would necessitate the building of a partition lengthwise the store, in the middle of it, it seems to us, was calculated to incite Wescott to inquire of Mattox as to the purposes to which the store was to be put, if he deemed knowledge of such purposes material; and yet, he made no such inquiry. That the parties with whom Mattox contracted preferred the written consent of Wescott to Mattox, and that they proceeded to make the contract after hearing what was said by Mattox through the phone to Wescott, seems to us to be a mere incident, and to possess nothing of an invalidating character in respect to the consent which had already been given to Mattox. The fact that Wescott said he would go to the store and see Mattox on Monday cannot be treated as a revocation by Wescott of the consent already given. Mattox was perfectly justified in acting upon the oral consent, so far as that statement goes, and if the parties he was contracting with chose to proceed to the conclusion of the contract without the consent of Wescott expressed in writing it did not concern Wescott.

Having obtained the consent, the lease contract stood, in respect to the question of subleasing, as if no condition as to subrenting had been originally placed in it.

What, then, were the rights of the parties under the lease, with regard to the subrenting, with the consent of Wescott given? It contains no stipulation or agreement as to the nature of the business that should be conducted in the store, nor that a restaurant should not be conducted therein. Mattox had the right, then, to subrent it for the purposes of a restaurant. The case of *Crommelin v. Thiess*, 31 Ala. 421, 70 Am. Dec. 499, is in point on this proposition; and also see Jones on Landlord and Tenant, § 108. It also appears from the evidence that running a restaurant in the store increased the insurance rates slightly, but that before this suit was brought Mattox had offered to Wescott to pay any increase in the insurance rates.

But it is said there was no consideration for the consent to subrent. This suggestion is met by the facts that after consent was obtained, and on the faith thereof, and before any dissent from the leave to subrent was uttered, Mattox had entered into a legal, binding contract to sublet the premises, and, further, that after being notified that the lessors would not allow the store to be subrented for a restaurant, as the record shows, Mattox proposed to them that, if they would hold him harmless against a breach of his contract with his lessees, he would not allow them to take possession, and that this proposition his lessors ignored.

It is further insisted that consent was not obtained from all the lessors—that only Baldwin Wescott gave consent. The evidence shows without conflict that Baldwin had acted for the other plaintiffs (lessors) in renting the property and in collecting the rents, and, as we think, shows his general agency in respect to this property. But, aside from this, the evidence shows without conflict that Baldwin Wescott consented to sublease, and therefore as he is not entitled to recover, none of the plaintiffs can do so.

Upon the whole case, we are of the opinion that the court erred in rendering judgment for the plaintiff, and hold that judgment should have been rendered for the defendant.

Reversed and rendered.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.