## The Newfield Building Company vs. Mohican Company.

Third Judicial District, Bridgeport, October Term, 1926.

Wheeler, C. J., Curtis, Maltbie, Haines and Hinman, Js.

A construction of a lease which will lead to a forfeiture for condition broken or to a restriction upon the privilege of subletting will be avoided if reasonably possible.

Under the common law, a lessee enjoys the privilege of assigning or subletting unless the lease provides otherwise.

A lessor may expressly waive an option, given him by the lease, to prevent assignment or subletting, or he may do so by implication, as where he permits either to be done without making an objection.

A requirement in a lease that the lessor's assent to an assignment or subletting shall be obtained in writing may, since it exists for his benefit, be waived by his oral assent.

The lease in the present case provided that the lessee should not "have any right to sublet the demised premises or to assign this lease if at the time the lessor, or his heirs, executors, administrators, or assigns is or are willing to accept a surrender of the lease." *Held* that this provision did not require the lessee to secure the lessor's assent before exercising its privilege to sublet or assign, but that it merely empowered the lessor to defeat the privilege by communicating his willingness to accept a surrender.

In 1910, after the defendant corporation had occupied the premises for one year under a twenty-year lease and had expended about $22,000 for alterations and equipment, its agent notified W, the lessor, that inasmuch as its business for that year had been conducted at a loss of $12,000, it desired to surrender the lease, but W, who wished to retain the defendant as a tenant in the belief that its presence in his building would be to his advantage, refused to terminate the relation and proposed that the defendant thereafter use only a portion of the premises for its own purposes and that it subdivide the balance, according to plans suggested by him, with a view to making subleases which, he advised, should be for short terms only, in order that the defendant should be in a position to obtain the benefit of increased values in the location *"from time to time during the remainder of its lease."* The defendant carried out these suggestions at an additional cost of $17,500 and made various sub-

Newfield Building Co. *v.* Mohican Co.

leases and renewals thereof until W's death in 1920. In the following year W's estate, represented by his son, notified the defendant in writing that "it is willing to accept a surrender of your lease at the present time or at any time hereafter during its term." Despite this notice, the defendant, in 1923, renewed two of its subleases; and the plaintiff corporation, which shortly thereafter acquired the property through mesne conveyances from the heirs of W, brought the present action claiming that these renewals were a breach of the conditions of the original lease and praying for a decree of forfeiture. *Held:*

1. That the arrangement made in 1910 between W and the defendant was a valid contract, founded upon valuable consideration, and binding upon the heirs of W, by which he waived for the full term of the lease, his power to prevent assignment or subletting by the defendant.

2. That, under all the circumstances, W and his heirs were estopped in equity by his conduct at that time to assert thereafter such a power.

3. That, since the plaintiff was relying wholly upon its position as successor to the rights of W and his heirs and in no way upon any action taken or notice given by itself, and since it was not an innocent purchaser for value and without notice, it was not entitled to the relief demanded.

Argued November 9th, 1926—decided January 28th, 1927.

ACTION for a judgment declaring the forfeiture of a lease, for damages and for other relief, brought to the Superior Court in Fairfield County where the defendant's demurrer to the complaint was overruled (*Ells, J.*) and the issues later tried to the court (*Booth, J.*); judgment for the plaintiff, and appeal by the defendant. *Error; judgment to be entered for defendant.*

*Frank L. McGuire* and *C. Hadlai Hull,* for the appellant (defendant).

*Sanford Stoddard,* with whom was *Benjamin Slade,* for the appellee (plaintiff).

HAINES, J. The finding shows that the property involved in this action is on the northeast corner of

Main and Golden Hill streets in Bridgeport, known as the Newfield Building; and that from January 1st, 1909, to his death, November 14th, 1920, it was owned by Samuel H. Wheeler. On February 24th, 1909, he leased the ground floor with the basement storeroom and the rear portion on the second floor to the defendant, for twenty years, by written indenture, referred to in the record as Exhibit A. On this date, extensive repairs to the building were being made by the owner, which were completed before April 24th, 1909, at which date the defendant, by oral agreement with the owner, took possession of the leased premises, although its term did not begin till May 1st, 1909. Before entering into possession, the defendant expended $17,430.89 for furniture and fixtures, and $5,268.25 for construction work, to adapt the premises to the business it desired to conduct therein. In the first year of its tenancy, the defendant lost about $12,000, and this fact was stated by its general manager to Mr. Wheeler, in a conference with him. The defendant thereupon offered to surrender the lease. Mr. Wheeler was not willing to accept a surrender. He considered it was an advantage to the premises and to his other property in the vicinity, to retain the defendant as a tenant, and he believed the presence of the defendant there would attract business to that part of the city. Under these circumstances, Mr. Wheeler made a proposition to the defendant that it occupy only a portion of the premises it had leased, and, at its own expense, subdivide the remainder in accordance with plans which he himself suggested, and then sublet such portions to tenants, and thus be able to operate at a profit. He further advised the defendant to make the subleases for short terms only, so that it might be able to take advantage of increased

Newfield Building Co. *v.* Mohican Co.

values in the location, "from time to time during the remainder of its lease."

The defendant accepted the proposition and made the necessary changes in the property to adapt it for subletting, at an expense of more than $17,500, and with a necessary resulting loss in value of a considerable portion of the original installation. While these changes were being made, Mr. Wheeler visited the premises frequently, and, in several instances, suggested further changes, which suggestions the defendant adopted. The defendant then proceeded to make subleases to various parties for various periods, these subleases and their renewals continuing to the death of Mr. Wheeler in 1920, a period of about ten years. Two of the subleases made during this period, were to Mintz and to Schulte, Inc., respectively, and the subleases now complained of are renewals of such original subleases. In February, 1917, Mintz had asked and obtained the consent of Mr. Wheeler to make certain changes which he desired, and this was granted on his promise to later restore the premises to the condition in which they had been put by the defendant. The will of Mr. Wheeler was admitted to probate in November, 1920. He therein gave his entire estate to his widow, Dora R. Wheeler, who was also named as executrix. A certificate of devise to her was issued August 31st, 1923, and on the same day she conveyed the premises in question by warranty deed to the Wheeler Company, two of the seven directors of which were herself and her son, Nathaniel Wheeler.

On September 24th, 1923, the Wheeler Company conveyed by warranty deed to Samuel N. Schnee and Abraham C. Schnee, who executed a purchase money mortgage on that date to the Wheeler Company, for $250,000, subject to a prior mortgage for $100,000 to the Bridgeport Savings Bank. Schnee and Schnee and

one Resnick organized the plaintiff corporation and on October 5th, 1923, executed a warranty deed to the corporation, of the premises in question. This deed was not recorded till January 18th, 1924, for the reason that Schnee and Schnee desired to increase the first mortgage to the Bridgeport Savings Bank, to $150,000, after paying $100,000 on the purchase price, and this new mortgage was given November 6th, 1923. The original lease to the defendant contained the following: "4. The lessee shall have the right to sublet the said premises or to assign said lease to parties conducting a business not detrimental to the advantageous use of the remainder of the building. The lessee shall however, in no event, have any right to sublet the demised premises or to assign this lease if at the time the lessor, his heirs, executors, administrators, or assigns is or are willing to accept a surrender of the lease." No notice of a willingness to accept a surrender of the lease was ever given to the defendant by Samuel H. Wheeler to the time of his death, November 14th, 1920, but on March 28th, 1921, the following letter was sent to the defendant: "You will recall that under the terms of your lease made with Samuel H. Wheeler of your store in Bridgeport dated February 24, 1909, your right to sublet the premises exists only if the lessor is not at the time willing to accept a surrender of the lease. On account of the constantly increasing expense of operation of the building and of the amount of taxes collected thereon, the estate feels that it must take every step which may contribute to produce an adequate return from the building. It, therefore, advises you that it is willing to accept a surrender of your lease at the present time, or at any time hereafter during its term. Yours truly, Estate Samuel H. Wheeler, per Nathaniel Wheeler."

This was the only notice which has ever been re-

ceived by the defendant corporation from anyone, expressing a willingness to accept a surrender of the lease in question. No corporate action was ever taken by the Wheeler Company or by the plaintiff company, to signify its willingness to accept a surrender or to declare a forfeiture because of a violation of the terms of the lease by the defendant, and no attempt was ever made by anyone to enter and take possession of the premises because of such claimed breach. Notwithstanding the notice of March 28th, 1921, the defendant company, on April 4th, 1923, sublet a portion of the premises to Mintz, and another portion to Schulte, Inc., both of which subleases expire April 20th, 1929, and continue a possession which each subtenant had had under prior leases then expiring. These two subleases covered about twenty-five per cent of the entire premises described in the lease in question.

The plaintiff, by this action, is seeking to force a forfeiture of the defendant's lease in order to avail itself of the increased rental and other value which the property has acquired since 1910. Its complaint rests upon the claim that while the subleases made during the life of Mr. Wheeler were authorized by paragraph 4 of the lease, the making of the subleases of 1923, after the notice sent to the defendant in 1921, was a violation of the terms of this paragraph. In its answer to this, the defendant says, in effect, that after the execution and delivery of the lease and while the defendant was occupying the premises as lessee thereunder, it made an agreement with Mr. Wheeler, the lessor, which gave it the unrestricted legal right to make subleases at any time during the remainder of the term; that this right to sublet during the remainder of the term was granted to it by Mr. Wheeler in consideration of the expenditure of large sums of money by the defendant to modify and change por-

tions of the premises and adapt them to subletting, that these were permanent improvements and greatly enhanced the value of Mr. Wheeler's property. The burden rested ultimately upon the plaintiff to establish its contention that the subleases of 1923 were a violation of the provisions of paragraph 4 of the defendant's lease.

The trial court held that the plaintiff had sustained that burden, the following conclusions appearing in the finding: "4. On October 1, 1923, the defendant broke said lease by then putting its sublessees into possession of part of the premises under subleases made April 24, 1923. 5. Neither the plaintiff, nor any predecessor in title, has expressly or impliedly waived the provisions in said lease in respect of subletting, nor the right to terminate said lease for breach of said provisions. . . . 17. Samuel H. Wheeler made no agreement, express or implied, with the defendant changing the terms of the lease, Exhibit A, in respect of subletting, and made no statement or representation not in accordance with the terms of said lease in respect of subletting." All these conclusions, both of law and fact, are challenged by this appeal and are here presented for review. Our inquiry requires a consideration of the true scope, meaning and legal effect of both paragraph 4 of the lease, and of the so-called agreement of the parties in 1910.

Forfeitures of leaseholds for condition broken, and restrictions upon the right to sublet, are both looked upon with disfavor, and a construction of a contract which leads to either of these results will be avoided if reasonably possible. *Camp* v. *Scott,* 47 Conn. 366, 375; *Chamberlain* v. *Brown,* 141 Iowa, 540, 120 N. W. 334; *Conneaut Lake Ice Co.* v. *Quigley,* 225 Pa. St. 605, 74 Atl. 648; *In re Prudential Lithograph Co.,* 270 Fed. 469; *White* v. *Huber Drug Co.,* 190 Mich. 212,

157 N. W. 60; *Maddox* v. *Wescott,* 156 Ala. 492, 47 So.
47; 1 Wood on Landlord & Tenant (2d Ed.) p. 714.

The first part of paragraph 4 is clearly an affirmance
of a right which, in the absence of anything in the
agreement to the contrary, the lessee already enjoyed
at common law. *Farmer* v. *Davies,* 97 N. J. L. 309,
116 Atl. 706; *McBee* v. *Sampson,* 66 Fed. 416; *Eten*
v. *Luyster,* 60 N. Y. 252; *Cooney* v. *Hayes,* 40 Vt. 478;
*Rickard* v. *Dana,* 74 Vt. 74, 52 Atl. 113; *Rosenberg* v.
*Taft,* 94 Vt. 458, 111 Atl. 583; *Shumway* v. *Collins,*
72 Mass. (6 Gray) 227, 230.

In the last part of the paragraph, the lessor reserved
what may properly be called an option, which operated
as a restriction or limitation upon the right to sublet,
viz.: "The lessee shall however, in no event, have any
right to sublet the demised premises or to assign this
lease if at any time the lessor, his heirs, executors,
administrators, or assigns is or are willing to accept a
surrender of the lease." Whether, in a given instance,
the lessor was willing to accept a surrender, could not
of course be known to the lessee till the lessor spoke.
What, then, was the effect of this option? There are
two possible interpretations. It might be held to
have deprived the lessee of all right to assign or sublet
until the lessor spoke. In that event, any assignments
or subleases would be invalid unless the lessee first
obtained the statement of the lessor that he was not
willing to accept a surrender of the lease. The lan-
guage of the notice of 1921 shows its writer gave the
provision this broad interpretation. A more natural
construction, however, and one which must and should
be adopted, is that the right to make valid assignments
and subleases continued in full force until the lessor
signified a willingness to accept a surrender. The lease
does not require the assent of the lessor as a condition
precedent to the making of a valid assignment or

sublease, nor is a written assent or dissent required. The provision in question amounts to an option to prevent subletting. Obviously such an option may be waived by its possessor, and a waiver would be implied, generally, if the lessor allowed assignments or subleases to be made and said nothing; *Winestine* v. *Rose Cloak & Suit Co.*, 93 Conn. 633, 638, 107 Atl. 590; *Fort Orange Barbering Co.* v. *New Haven Hotel Co.*, 92 Conn. 144, 152, 101 Atl. 505; *Malley* v. *Thalheimer*, 44 Conn. 41; and such waiver may be express as well as implied. *Wertheimer* v. *Wayne County Circuit Judge*, 83 Mich. 56, 47 N. W. 47; *Miller* v. *Ready*, 59 Ind. App. 195, 108 N. E. 605, 607; *Maddox* v. *Wescott*, 156 Ala. 492, 47 So. 170; 35 Corpus Juris, p. 983, § 70, and cases cited.

The defendant here claims that the arrangement made in 1910 between Mr. Wheeler and itself was, in effect, an agreement to waive his right to prevent assignments or subleases, that agreement covering the entire remainder of the defendant's term; while the plaintiff contends that no such agreement has been shown, and that, in any event, it was not the agreement pleaded in the answer, and not being within the issues can avail the defendant nothing. It becomes important, therefore, to examine the facts before us concerning the conference of 1910 and determine its scope and effect. In discussing this and some other aspects of the case, the plaintiff mistakenly appeals to the transcript of the evidence given at the trial. Into that field we may not enter. The plaintiff's citations and quotations from the evidence have no place in the argument, since we are confined to the finding for our information as to the facts.

The vital importance of this phase of the case justifies a somewhat detailed examination of the subordinate facts. It is conceded that, at the end of the first

year of the tenancy, the lessee proposed to surrender the lease. With a loss of $12,000 already incurred for the first year, to say nothing of $22,000 spent for fitting up the premises for its use, the prospect of nineteen years more was not alluring. It is clear that both parties felt that something should be done. For reasons already stated, Mr. Wheeler desired to have the tenancy continue. He met the defendant's proposition to surrender with a counter one, to which we have referred. This proposition appealed to the defendant and was accepted, and it spent more than $17,000 under Mr Wheeler's direct supervision in carrying out the plan. It is clear that out of his valuable knowledge and experience, Mr. Wheeler was seeking a means of retaining a satisfied tenant as well as a responsible one, by ensuring that tenant a profitable tenancy, and convinced the defendant that the advice was good. It was also a part of Mr. Wheeler's proposition that the defendant make its subleases for short terms, so it could take advantage of the increase in value of the location (which he believed the years would bring) *"from time to time during the remaining term of its lease."* This unchallenged fact from the finding, makes the conclusion inescapable that, when the suggestion was adopted, it was with a mutual understanding between Mr. Wheeler and the defendant that the latter was to continue the subletting without interference for the remainder of the term of the lease. Moreover, the surrounding circumstances all support this conclusion. The facts given us contain no hint that this right was to be temporary only. The clearly stated purpose of Mr. Wheeler, to make the tenancy show a profit to the defendant, could not have been accomplished by one or two short term subleases. The defendant would, obviously, not have adopted the suggestion of Mr. Wheeler knowing or believing it was

limited to a short period, and it is almost equally unthinkable that Mr. Wheeler would thus have induced the defendant to spend a large sum of money increasing the rental value of his property, and at the same time intend to reserve a right by which the subletting could be stopped at the end of any short term sublease, possibly at the end of a month, or by which he could take over to himself all the benefits of the improvements and force a ferfeiture against the defendant by declaring a willingness to accept surrender. The claims of the plaintiff and the conclusions of the trial court, however, come to just that. They hold that the right to prevent subletting or to terminate the lease was intended by the parties to continue in full force after one term of subletting, following the conference of 1910, and that Mr. Wheeler made his suggestion to the defendant, and saw the defendant's money spent in carrying out his suggestion, and yet purposed to reserve the right to stop further subletting or take over the property at the end of a single short term, say a month. We can find no warrant in the record for ascribing any such motive to Mr. Wheeler. It is not a reasonable conclusion from the subordinate facts, and the trial court in reaching it was in error.

From these subordinate facts, on the contrary, emerges a well-defined understanding, made in good faith for the mutual benefit of the parties. Mr. Wheeler's proposition being adopted, secured the continuance of a tenancy which he desired, obtained valuable and costly improvements upon his property, and greatly increased its income-earning power, and in exchange for this he clearly gave the defendant to understand that its right to sublet portions of the property would not be hindered during the remainder of the term of the lease. This understanding was not in conflict with paragraph 4 of the lease. The language of

that paragraph permitted him to say, "I am willing *at any time during the remainder of the term,* to accept a surrender of the lease," (exactly as the Wheeler Company sought to do in the notice of 1921. See Complaint, par. 10); or he could say, "I am *not* willing to accept a surrender of the lease *at any time during the remainder of the term.*" That the latter understanding was reached between the parties is the only reasonable conclusion which can be drawn from the subordinate facts before us. So far as the issues raised by the pleadings are concerned, we think this does not conflict with the doctrine of *Whiting* v. *Koepke,* 71 Conn. 77, 40 Atl. 1053, cited by the plaintiff. It should not be overlooked also, that this was the construction put upon the understanding by the conduct of both parties thereafter. Various subleases and renewals were made, and Mr. Wheeler and the defendant never made any further agreement, but acted upon the understanding of 1910 for the ten years which followed, to Mr. Wheeler's death. If the agreement had been made for purposes of a particular sublease, there might have been ground for claiming that, when another sublease was proposed, a further understanding was necessary, but the facts found and their necessary implications do not permit this construction of the agreement. It contemplated a series of subleases *to be made for short periods from time to time during the remainder of the defendant's term.* The lease does not require that the assent of the lessor be in writing, and even if it did, such requirement, being for the lessor's benefit, would have been waived by the oral assent. *Maddox* v. *Wescott,* 156 Ala. 492, 47 So. 170; *Adams* v. *Shirk,* 117 Fed. 801; 16 R. C. L. p. 874, § 378.

The agreement covered the full term of the lease. It was upon valuable consideration and necessarily

binding upon the lessor and his heirs, in whose shoes the present plaintiff now stands. The plaintiff predicates its case solely upon the rights of the lessor and his heirs, and not upon any notice or other action by itself. It is, in no sense, an innocent holder for value, or without notice.

Under all the circumstances disclosed by the record, fundamental principles of equity would be violated if one having privity of interest with Mr. Wheeler could now be heard to put a different construction upon the understanding from that of the parties themselves, or to force a forfeiture. Indeed, the more the situation is studied, the more impressive the inequity of the plaintiff's demands becomes.

A consideration of the facts leads by way of estoppel, to the same conclusions we have indicated above. The lessor induced the defendant to expend a large sum to increase the rental value of the property. This was done by giving the defendant the unhindered right to sublet portions of the property from time to time during the remainder of the term. If there were a withdrawal of this right at any time during the term by the lessor or by those in privity with him, the defendant would be seriously prejudiced, either by its denial of the benefits of the rentals from subletting, or by being required to forfeit its lease and all the moneys invested in the property. The office of an equitable estoppel is "to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." *Canfield* v. *Gregory,* 66 Conn. 9, 17, 33 Atl. 536. It is "founded in the obligation which every man is under to speak and act according to the truth of the case, and in the policy of the law to prevent the great mischiefs resulting from uncertainty, confusion and want of confidence

in the intercourse of men, if they were permitted to deny what they have . . . solemnly asserted and received as true"; and "wherever an act is done or a settlement made . . . which cannot be contravened or contradicted without fraud, or gross misconduct which is akin to it, on his part, and injury to others whose conduct has been influenced by the act or omission, . . . the character of an estoppel will attach to what would otherwise be a mere matter of evidence." *West Winsted Savings Bank & Bldg. Asso.* v. *Ford,* 27 Conn. 282, 290; *Holmes* v. *Brooks,* 84 Conn. 512, 516, 80 Atl. 773.

"When one person by anything which he does or says, or abstains from doing or saying, intentionally causes or permits another . . . to believe a thing to be true, and to act upon such belief otherwise than but for that belief he would have acted, neither the person first mentioned nor his representative in interest is allowed, in any suit or proceeding between himself and such person or his representative in interest, to deny the truth of that thing." Stephen's Digest of Evidence, Art. 102.

The restrictive provision in the lease contains the words "if at the time," obviously referring to the time of making any sublease and intending to give the "lessor, his heirs, executors, administrators or assigns" the right to impose the restriction. The present plaintiff can only claim—under the circumstances of this case—such right as the heirs of Mr. Wheeler could have had to declare a forfeiture, and it is not necessary to inquire whether its rights would have been different if it had relied upon the land records and become an innocent assignee for value.

It results from the views we have expressed, that the right of the defendant in the present case to sublet has remained and will continue for the balance of the

defendant's term, and the subleases made after the death of Mr. Wheeler, notwithstanding the notice to the defendant in 1921, were not made in violation of the terms of the lease. This leaves the complaint without support. Furthermore, it renders the requested corrections of the finding unimportant, and the other questions presented by this appeal of academic interest only.

There is error, the judgment is reversed, and the Superior Court directed to enter judgment for the defendant.

In this opinion the other judges concurred.