METROPOLIS MANUFACTURING COMPANY *vs.* DAVID W. LYNCH.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js

Under our present practice, if the facts alleged in a complaint and proved on the trial, satisfactorily establish a cause of action against the defendant for a breach of contract, the plaintiff is not precluded from claiming in argument a judgment upon that ground, merely because he- had, in arresting the body of the defendant and in one clause of a demurrer to a plea in abatement, treated the action as one of trover; especially if it appears by the record that the demurrer might have been sustained upon other grounds than an abandonment of the plaintiff's right to recover upon the theory of a contract action.

[Argued November 4th—decided December 22d, 1896.]

ACTION to recover damages for failure to return or account for goods consigned for sale on commission, brought to the Superior Court in Fairfield County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *Error and new trial granted.*

This action was brought to the Superior Court for Fairfield county at its session held on the first Tuesday of April, 1893, by writ directing attachment of defendant's body. The complaint alleged: " 1. The plaintiff is a manufacturer and wholesaler of house-furnishing and ornamental goods of the sort hereafter described. 2. For a year and more prior to the bringing of this suit, the plaintiff had been consigning and delivering to the defendant, at the latter's store in Bridgeport, goods as above described under a contract whereby, in consideration of said consignment and delivery by the plaintiff into the possession of the defendant, and in consideration of a commission to be allowed the defendant of thirty per cent on all such goods as he should sell on the installment plan by way of lease and conditional sale, and a fifty per cent on all such goods as he should sell for cash, the defendant agreed to keep a correct set of books open for the inspection of the plaintiff at all times, and to deliver the plaintiff all leases that he should take for goods sold on the installment plan by way of leases and conditional sale, and to pay the plaintiff fifty per cent of the price at which goods were consigned to the defendant, on all goods sold for cash, and to return to the plaintiff all goods remaining unsold or that should be retaken from delinquent lessees and purchasers, and in case of any dissatisfaction arising between the parties, to deliver over all goods and leases in his possession. 3. As to all goods so delivered during the period of a year and more prior to the bringing of this suit, the defendant became and has been the agent, factor, bailee, and commission dealer of the plaintiff, and has been a person acting in a fiduciary capacity for the plaintiff. 4. The defendant has not kept a correct set of books open to the inspection of

the plaintiff at all times.    5.  Before the bringing of this suit the plaintiff, pursuant to said contract, consigned and delivered to the defendant, and the defendant became possessed of, the following goods of the plaintiff of the values indicated:  . . .  6.  Before the bringing of this suit dissatisfaction arose between the parties as to the manner in which the defendant conducted his part of the business, and thereupon the plaintiff demanded of the defendant that he deliver up to the plaintiff the goods just described, or else, if he had sold the same, that he should deliver up to the plaintiff the leases received for such of them as were sold on the installment plan as aforesaid, and fifty per cent of the money received for such of said goods as were sold for cash; but the defendant refused to comply with any part of said demand.    The plaintiff claims $2,000 damages."

The defendant pleaded in abatement as follows: " The defendant pleads in abatement, because at the commencement of this action there was, and now is, another action pending in the Superior Court in and for Fairfield county, between the same parties as the parties to this action, and for a cause growing out of the same continued transaction, from which arose the cause set forth in said later complaint, of which Exhibit " A " is a true copy, hereunto annexed.

" This said cause of action existed at the time the first said action was brought, and ought to have been included in said first action; and therefore he prays judgment."

Exhibit A contained copies of a writ dated November 22d, 1892, containing the form of complaint called " The Common Counts," returnable to the Superior Court for Fairfield county at its session on the first Tuesday in January, 1893 (the plaintiff and defendant being the same as in this suit), and a bill of particulars filed May 26th, 1893.    To this plea the plaintiff demurred as follows:  " The plaintiff demurs to the plea in abatement as amended, because it appears that the other action alleged to be pending is an action of contract, brought by the present plaintiff against the present defendant, and because, even if the cause of action did arise ' out of the same continued transaction,' the joining of that

and the present cause of action, would be optional with the plaintiff; and because such joining would manifestly lessen the efficiency of the plaintiff's remedies, in that he could not arrest the body of the defendant if he so joined contract and tort, in one complaint; and because it does not appear that the two causes of action arose out of the same transaction; and because the facts stated, are insufficient in substance to cause this action to abate."

The court, *Hall, J.*, sustained the demurrer. The defendant then answered, admitting that he became possessed, apart and distinct from the contract alleged, of a portion of the goods described, and admitting a demand, but denied the other matters alleged in the complaint; and averred that he had entrusted the goods that came into his possession to subagents, by the direction and authority of the plaintiff, and that the goods had not been returned by the subagents, nor accounted for by them. The court, *George W. Wheeler, J.*, rendered judgment for the defendant, and upon the plaintiff's appeal found the following facts:—

"1. On October 23d, 1889, the defendant and one C. W. Morse, who subsequently became president of plaintiff company, began doing business together and continued until April, 1891, when a copartnership under the name of the Metropolis Manufacturing Company took the business of said Morse, assuming his liabilities and taking his assets, and it continued the business with the defendant to April 25th, 1892, when the copartnership was succeeded by the plaintiff, a joint stock company, in taking the assets and assuming the liabilities of the copartnership, with the knowledge and consent of the defendant. 2. The business conducted between Morse, the copartnership, and the plaintiff company, and the defendant, was the same during all these years. 3. The plaintiff and its predecessors were during all of this time manufacturers and wholesalers of house furnishing and ornamental goods in New Haven, Conn. 4. The defendant, a firm consisting of one member, D. W. Lynch, was during all of this time engaged at Bridgeport, Conn., in the business of selling goods, consigned and delivered to him by the plaintiff

and its predecessors, upon the installment plan. 5. The said plan of contract agreed upon by said parties was this: The plaintiff consigned goods to the defendant, to remain the property of the plaintiff until sold by the defendant. The defendant received said goods and sold the same under said contract for cash, or upon a lease or conditional sale. Upon sale by cash or on lease, the cash or lease was to be transmitted to the plaintiff each week. Goods remaining in stock in hands of defendant were the property of the plaintiff. The plaintiff each week sent invoices of shipments made, which the defendant returned signed, if correct, and each week the defendant sent a complete report of the week's business, containing the balance of stock on hand from the preceding week, the goods sold and leased during the week, the goods on lease returned, and the balance of the goods on hand. This weekly report was corrected by the plaintiff, and the next week's report made out from the corrected balance of the preceding week. The defendant kept a set of books from which his weekly stock report was made up and with which it corresponded. Each week the defendant accounted for and transmitted the cash for goods sold for cash, and the leases of goods sold on the installment plan. The defendant collected the first payment under said leases and transmitted this together with the leases to the plaintiff; the plaintiff verified by its own agents the leases, and thereafter collected subsequent payments under the leases. Upon the transfer of said leases and the verification of the same by the plaintiff, the defendant's responsibility for the goods leased ceased. Goods stolen or lost by the negligence of agents were to be charged against the defendant. Goods leased and returned damaged were to be resold by the defendant at the best price obtainable, and the loss suffered by the plaintiff. Certain commissions were to be allowed the defendant, for cash sales 50% on the invoice price; for leased sales 30%, unless otherwise agreed. Special commissions were allowed on different goods from time to time. Collections on leased goods were to be made by plaintiff, and an account of commissions of defendant made from time to time. The defendant employed

his own subagents to sell these goods, in the manner above described.    6. The parties ceased doing business together on October 29th, 1894.    7. At that time the last weekly stock report, dated October 29th, 1892, contained a list of goods presumably in the hands of defendant, but the defendant did not then have all of these goods in his hands, and of those in his hands, many were damaged and not worth the price set opposite them in the stock report, and the plaintiff knew this fact.    There was in fact at the time of making all weekly reports a shortage which the plaintiff knew.    8. After November 1st, 1894, and upon the demand of plaintiff that the defendant return to it all goods called for by the current weekly report and all goods charged to him, the defendant shipped a large amount of goods to the plaintiff which had previously been consigned to him by the plaintiff, being all the goods of the plaintiff in the possession or control of the defendant at that time.    9. The goods shipped were, in the main, in damaged condition, and some were so broken as to be of no value, but so far as appeared in evidence, this was not attributable to the negligence of the defendant.    10. This action is brought for the conversion of the balance of the goods not returned.    The character, amount and invoice price of these goods are correctly described in the complaint.    Included in these goods were the goods returned and described in paragraph 9 as 'some were so broken as to be of no value.' In case of sale the defendant would have been properly chargeable with one half of the said invoice prices.    11. The balance of said goods consigned and not accounted for, for the most part consisted of goods stolen by the defendant's agents, and in part of goods damaged and destroyed while in hands of parties to whom they were leased, and in part of goods lost in hands of lessees.    For these goods the defendant had not accounted in cash or by lease, and had returned a part in the broken condition described in paragraph 9; how many and what proportion of the goods these were did not appear. 12. Most of the said goods were stolen or lost before the plaintiff company was formed, and the plaintiff knew there was a shortage, as did its predecessors, but did not know the

amount of the shortage. 13. The defendant was responsible for the said goods stolen. No evidence was offered to show that the said goods lost or damaged, were lost or damaged through the negligence of the defendant or his agents. 14. The plaintiff made demand on February 23d, 1893, upon the defendant for all goods shipped to it and unaccounted for by sale or lease, or else, if he had sold the same, that he should deliver up to the plaintiff the leases received for such of them as were sold on the installment plan, and 50% of the money received for such of said goods as had been sold for cash. The defendant made no further compliance with said demand. 15. No evidence was offered of the value of the goods stolen, nor of the value of the goods damaged, destroyed and lost. 16. No evidence was offered of the value of any of the goods at the time they were stolen, lost, or damaged, nor of the time when they were lost, stolen or destroyed. 17. Evidence of the value of the shortage in goods described in the complaint, at the time of consignment, was offered, and the value at that time was 50% of the value stated in the complaint. 18. The amount of the shortage during the partnership and during the joint stock company, have not been and cannot be ascertained, because of the method of book-keeping adopted by the parties. 19. So far as appeared in evidence, the said shortage was not attributable to the negligence of the defendant. 20. An action of assumpsit, brought before this suit, was pending between these parties at the time of the trial, for balances claimed to be due the plaintiff and unpaid on previous dealings, but none of the goods claimed in this action to have been converted, were enumerated in the bill of particulars in that case. . . .

" Upon the trial the plaintiff claimed : 1. The complaint sets forth a breach of contract-duty by one acting in a fiduciary capacity, and especially a conversion of the plaintiff's property by the defendant, and therefore the plaintiff can recover for breach of contract or conversion. 2. Upon the facts in evidence trover will lie. 3. Trover will lie whether the articles were at the time of the demand or thereafter in the defendant's power to restore. 4. A commission dealer,

like the defendant, who refuses on demand to return the goods entrusted to him by his principal, or to account for the proceeds, is liable in tort for conversion. 5. Unless the defendant can show an agreement to exonerate him from liability for goods stolen by his agents, he is liable for their acts as though he had misappropriated the goods himself. 6. That the value of the goods stolen was known to the defendant, and he has not endeavored to show any depreciation. Acting in a fiduciary capacity, the presumption of full value is against him. 7. That interest on the full value of the goods runs from the time of demand. 8. That the value of the goods converted was $814, with interest from November 12th, 1892; in all $972.73.

" The court overruled claims 1, 2, 3, 6, 7 and 8, and ruled in accordance with the memorandum on file and herewith made a part of the record.

" Upon the trial the defendant claimed: 1. That even though he might be liable to the plaintiff in an action on his contract for goods lost while in his care, either in the course of business while in the hands of customers, or by thefts committed by subagents, yet this plaintiff could not recover for this contract liability in this action, which was one in tort for conversion, solely. 2. That the plaintiff having elected to proceed against the defendant in an action of tort, and having attached the body of the defendant in this action, could not be permitted to recover upon a contract, and amend his complaint to meet the proof which might show that the defendant was so liable under said contract. 3. That the defendant in this action, since he had not himself been guilty of any wrongful act towards the plaintiff, and had not wilfully destroyed these goods, or applied them to his own use, could not be held to respond in tort for a wrongful conversion of them, because they had been worn out in the course of business or had been stolen from him, either by customers to whom they had been entrusted, or by his subagents."

The ruling in accordance with the memorandum on file, and made a part of the finding, is as follows: " This action is to recover damages for a conversion of said goods. Some

suggestion has been made by counsel for the plaintiff in his brief, that if the facts stated in the complaint will support any judgment, that ought to be rendered regardless of whether the complaint be one for conversion or not. It seems to me that this action is one of trover. The plaintiff has so regarded it. Contemporaneous with this action he is maintaining an action of assumpsit against the defendant for moneys due and unpaid. He began this action by arresting the defendant's body. The demurrer to the plea in abatement filed June 3d, 1893, treats this action as one of conversion. It is too late for the plaintiff to now claim otherwise."

The appeal assigns as errors each of the rulings stated in the finding, and that the court erred " in awarding judgment for costs in favor of the defendant, upon the facts found."

*George P. Carroll*, for the appellant (plaintiff).

The facts alleged disclose a breach of contract by one acting in a fiduciary capacity, of such a nature that, in the absence of attachable property, the defendant's body was liable to attachment and levy of execution. Gen. Stat., § 1181. These facts also constitute a conversion, not mere evidence of a conversion. *Hartford Ice Co.* v. *Greenwoods Co.*, 61 Conn. 166; *Pratt* v. *Brewster*, 52 id. 65; *Robinson* v. *Way*, 163 Mass. 212. Since there was no line of demarcation between the facts showing a breach of contract and a conversion, the two causes of action were properly joined in one count. *Craft Refrigerating Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551. To be sure, on the demurrer to the plea in abatement and on the trial the plaintiff treated the aspect of conversion as more important. But a plaintiff " in drafting his complaint might fairly regard the greater as including the less." *Plumb* v. *Curtis*, 66 Conn. 174. It was not necessary for the plaintiff to prove all the allegations of the complaint to entitle it to a judgment. If the facts found were sufficient to constitute a cause of action and were within the issues, it was entitled to judgment. *Sprague* v. *Taylor*, 58 Conn. 542.

*John C. Chamberlain* and *John Cullinan, Jr.*, for the appellee (defendant).

. .In form the complaint cannot be construed as sounding in tort and also in contract. It does not claim alternative relief. In it the plaintiff does not—as the decisions say it must, if asking for alternative relief—*state the different kinds of relief, one of which he may fairly claim.* *Craft Refrigerating Mach. Co.* v. *Quinnipiac Brewing Co.,* 63 Conn. 564. The plaintiff having by demurrer made his election, and having asked for relief only in an action of *tort,* cannot now, merely because the evidence submitted to prove conversion developed the fact that there was an understanding which makes the defendant liable in assumpsit for the plaintiff's loss, claim that he would be so liable in this action. *Kimball* v. *Cunningham,* 4 Mass. 502; *Ferguson* v. *Carrington,* 9 B. & C. 59; *Field* v. *Bland,* 81 N. Y. 239; *Buckley* v. *Morgan,* 46 Conn. 393. It would seem clear that no recovery should be had against the defendant in trover, under the circumstances of this case. The facts found show that these goods were not converted by the defendant. It is a well established principle of law that demand and refusal do not constitute a conversion, when the defendant, at the time of the demand, was not in possession of the property demanded. *Dearborn* v. *Union Nat. Bank,* 58 Me. 274; *Jones* v. *Hodgkins,* 61 id. 480; *Johnson* v. *Strader,* 3 Mo. 366; *Packard* v. *Getman,* 4 Wend. 613.

HAMERSLEY, J. A complaint must contain "a statement of the facts constituting the cause of action, and a demand for the relief to which he (the plaintiff) supposes himself to be entitled." General Statutes, § 872.

In this case the facts alleged are, an agreement between the parties by which the plaintiff, a manufacturer, was to consign his goods to the defendant for sale in accordance with the terms of the agreement; the delivery to the defendant, in pursuance of that agreement, of the goods described and of the value stated; the occurrence of the condition by which, under the agreement, the plaintiff was entitled to demand and the defendant was bound to return said goods or their proceeds; .a demand by the plaintiff in pursuance of

the agreement and a refusal by the defendant to comply with the demand. The relief asked is a judgment for damages.

This complaint is an appropriate and, in the absence of demurrer, a sufficient statement of facts showing a breach of contract by the defendant, for which the plaintiff is entitled to the relief demanded. It appears from the finding of the trial court that an agreement, delivery and demand were proved substantially as alleged, that the demand made was not complied with, and that for this failure the defendant, in respect to a portion of the goods at least, is liable to the plaintiff in damages. Upon such a record the sentence of the law is a judgment for the plaintiff. The court, however, rendered judgment for the defendant; and it is claimed that this judgment is legal for the following reasons: The action is one of trover and has been so regarded by the plaintiff; he began the action by arresting the defendant's body; he treated the action as one of conversion in his demurrer to the plea in abatement filed by the defendant; it is too late for the plaintiff to claim any judgment except for damages in an action of trover; and treating the complaint merely as an action of trover, the facts proved will not support a judgment for the plaintiff, although the defendant may be liable in case or assumpsit.

These reasons are insufficient. Since the abolition of the common law forms of action and pleading, the phrase "an action of trover" does not accurately define a cause of action. The names of the ancient forms are still used for convenience as approximately designating different causes of action for which there is now only one form; but their use is sometimes deceptive in that, while the essential elements of a cause of action as determined by principles of substantive law may be unaffected by the change in procedure, yet those insignia of a distinct cause of action which depended upon or grew out of the limitations and fictions involved in the use of prescribed forms, have lost their significance as distinguishing marks of distinct causes of action.

It is doubtful if the allegations of this complaint sufficiently state a cause of action within the range of the com-

mon law action of trover. The gist of that action was a conversion, or the unlawful exercise of dominion over goods or chattels belonging to another who is entitled to their immediate possession. There is nothing in this complaint to support such a cause of action, except the demand to comply with the terms of an agreement and the refusal to comply; even if we treat this as equivalent to that " demand and refusal " which may be evidence of a conversion, the allegation is faulty if a statement of evidence and not of fact; and if a statement of fact, is defective because the essential facts are not fully stated. A cause of action arising from the unlawful exercise of dominion over property, cannot be properly stated without a direct allegation of the material facts which constitute the unlawful act. A demand and refusal, in connection with other facts alleged, may be sufficient to support a cause of action based on the unlawful exercise of dominion over the property demanded (as illustrated in Form 96 under the Practice Act); but it is doubtful if this complaint can fairly be said to state those facts.

If, however, the complaint can be treated as stating facts showing an unlawful exercise of dominion over the plaintiff's property, it is only because, by force of the contract alleged, the defendant's lawful dominion ceased the moment the demand was made, and so the refusal to deliver became both a breach of contract and an independent wrongful act. Here is a case where contract and tort, as classifying causes of action, overlap or blend, and the cause of action arising from one set of facts may theoretically be treated as sounding in contract or tort. Under the new procedure this theoretical distinction is rarely a practical one; for the complaint in such case, whichever theory is adopted, must state the same material facts and ask for the same relief. Judgment must follow proof of the facts alleged, whatever view the court may take of the classification of the cause of action; even if it should deem the proof insufficient to support the theory of tort, and the plaintiff has insisted, and insisted only, on that theory as entitling him to judgment. The views and claims of the plaintiff, however persistently pressed, cannot alter

the cause of action proved, nor control the judgment. When the complaint sets forth facts sufficient to support a cause of action, and those facts are established by the evidence to satisfaction of the trier, the court must pronounce the sentence of the law upon the facts as found. *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.,* 63 Conn. 551; *Thresher* v. *Stonington Savings Bank,* 68 id. 201.

The fact that the plaintiff caused the body of the defendant to be attached in the service of the writ, is immaterial to the question of judgment. A writ of execution may be levied on the body of a debtor unless in case of statutory exemption (General Statutes, § 1179), and *mesne* process may be served by arrest when the body is not exempt from imprisonment on the execution in the suit (§ 893) ; the body is exempt in all actions founded on contract merely, with certain exceptions (§ 1181). In this case the complaint alleges that the defendant was "acting in a fiduciary capacity for the plaintiff," apparently with intention of bringing an action founded on contract within the statutory exceptions which permit an attachment of the body in such action. But the statute (§ 893) also prohibits attachment of the body, "unless each cause of action in the complaint be such that execution may issue against the body of the defendant upon a judgment founded thereon." We doubt if an attachment in this case was proper under any correct view of the complaint ; but however that may be, the right of attachment depends upon statutes regulating process, and the fact of an attachment, whether valid or not, cannot control the judgment to be rendered on the facts alleged in the complaint and proved upon the trial.

Treating the action as one of conversion in his demurrer to the plea in abatement filed by the defendant, is simply additional evidence that the plaintiff insisted on his theory classifying the action as founded on tort. However strongly a plaintiff, in such a case, may have planted himself on this theory, he is still entitled in argument to claim a judgment on the theory of contract ; and if the law is so that the plaintiff is entitled, upon the facts alleged and proved, to a judg-

ment, it is the duty of the court to render that judgment, although the cause of action proved should be classed as one founded on contract, and the plaintiff has never ceased to claim that it is founded on tort. Of course, when the production of evidence or any material rights in the trial of a cause have been affected by pressing one theory to the abandonment of the other, different questions may arise. The only difficulty of that kind that can be suggested in this case, arises on the assumption that the defendant's plea in abatement was on the ground of the pendency of another suit between the same parties and for the same cause of action; that the plaintiff's demurrer was in effect an abandonment of any cause of action founded on contract; that the judge before whom the demurrer was tried, influenced by that abandonment, sustained the demurrer which he would otherwise have overruled; that having thus saved his suit from abatement and having failed to prove a cause of action founded on tort, the plaintiff now seeks to recover judgment upon a cause of action he has thus abandoned; and that a judgment under such circumstances cannot be rendered for the plaintiff, without using the court to give effect to a fraud both upon the defendant and the court.

It is not within the province of courts of justice to assist those who seek to violate the law, or to reap the benefits of their own fraud. It is the duty of a court to exhaust its powers to prevent a litigant from obtaining judgment through a deception practiced upon the court; and its powers for such purpose are ample. It is unnecessary to consider whether, upon the facts assumed, the proper course was to refuse to render judgment upon a cause of action alleged and proved, or to set aside the judgment on demurrer so obtained by fraud; for the assumption is not supported by the record.

The plea in abatement sets out in full the record of the pending action, by which it appears that the complaint in that action contained several counts in the form allowed for the commencement of an action called the "common counts;" that a bill of particulars, which as to some items is apparently for a different cause of action, and as to no item is certainly

for the same, had been filed, but that no one of the counts had been stricken out. Whether such a plea is, on demurrer, a sufficient statement of the pendency of a suit for the same cause of action, may be doubtful. *Damon* v. *Denny*, 54 Conn. 253, would seem to support the plea; but the question there discussed was evidently considered a very close one, and perhaps that case ought not to be pressed as an authority, or at least not beyond the precise point decided, *i. e.*, when the alleged pending action has been commenced with the form of complaint called the " common counts," and an issue of fact has been joined upon the allegations in the plea of abatement that the cause of action is the same, parol evidence that the transaction on which the second suit is based occurred before the bringing of the first suit, and is the only one which has occurred between the parties, is admissible. In the present case however, the plea in abatement does not allege that the former suit was for the same cause of action; the allegation is that the former suit was " for a cause growing out of the same continued transaction from which arose the cause set forth in said later complaint." Among the reasons specified in the demurrer are these : " Because it does not appear that the two causes of action arose out of the same transaction," and " because, even if the cause of action did arise ' out of the same continued transaction,' the joining of that, and the present cause of action, would be optional with the plaintiff."

Undoubtedly a party can no more maintain two suits at the same time on one cause of action, when one suit seeks to recover a part only of the damage due, and the other to recover a different part, than when both suits seek to recover all the damages. But this plea in abatement does not claim an attempt to split a single cause of action; it assumes that there were two causes of action, and claims that because they grew out of the same continued transaction, a judgment on the cause of action stated in the first suit must be a bar to a recovery on that stated in the second. This is not true. The plaintiff may join in one complaint several causes of action arising out of the same transaction, but he is not in all cases bound to do so. A plea in abatement must state with

certainty all essential facts. For all that appears, the court may have sustained the demurrer because it did not fully appear by the plea in abatement that the two causes of action stated in the first and second suits were such that the plaintiff was legally bound to include them in one complaint. At all events, it is not clear that the court sustained the demurrer because the plaintiff therein abandoned any right to recover on contract, nor is it certain that the language of the demurrer can fairly be held to express such abandonment. It may be that the former action was brought on the same cause of action as the present suit, and that the plaintiff has attempted to split a single cause of action, and brings his present suit to recover damages that might and should have been included in the first (the finding of the court suggests this); but this he may do and recover judgment on the second suit (if the first suit has not gone into judgment), unless the facts are properly pleaded by the defendant. If, however, when the demurrer to his plea in abatement was sustained, the defendant neglected to amend his plea, and instead answered the complaint under a misapprehension as to the ground on which the demurrer was sustained, caused by the fault of the plaintiff, it is possible the trial court may find sufficient reason for allowing the defendant to amend his plea in abatement so as properly to present the facts he had failed to state in legal form. On this we can express no opinion. It involves a matter of discretion on a state of facts that has not been ascertained. It may be that the court was right in saying that upon the facts alleged and found, the plaintiff could not have recovered at common law in an action of trover; but this was immaterial, if the plaintiff (assuming he was barred from recovering on the contract) was entitled to recover upon any non-contract cause of action, i. e., an action founded on breach of a duty imposed by law, as distinguished from a duty imposed by agreement. The right of recovery on such a cause of action depends upon the facts alleged and proved, and not upon the question whether case or trover would have been the proper form of action at common law. There is no need, however, to pursue the subject, for we are satisfied that

a breach of contract having been alleged and proved, the court erred in ruling as stated in the finding, that after the plaintiff had treated the action as one of trover in the arrest of the body of the defendant, and in the demurrer to the plea in abatement, it was too late to claim otherwise, and in awarding judgment for costs in favor of the defendant upon the facts found.

There is error in the judgment of the Superior Court.

In this opinion the other judges concurred.