PAUL WEBB, TRUSTEE, vs. CONSTANT A. MOELLER.

Third Judicial District, Bridgeport, April Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A subscription to the stock of an existing corporation, when accepted, makes the subscriber a stockholder and liable, as such, to calls for the full amount subscribed; but a promise, made to a broker employed by the corporation to sell a prospective issue of its stock, to take all of the issue for which he could not obtain other purchasers, is not a subscription nor does it make the promisor a stockholder, though it may create a valid obligation for a breach of which damages would be recoverable.

Such an undertaking, however, is not an absolute one, but rests upon the implied condition that the broker will use all reasonable efforts to dispose of the stock to others; and therefore if he shortly abandons all attempts to obtain further subscribers, as in the present case, the condition precedent is not satisfied and no obligation to subscribe comes into existence.

The plaintiff, who was the trustee in bankruptcy of the corporation, contended that the defendant promisor was liable upon the ground of estoppel. Held that such contention was unavailing, since it did not in any wise appear that the bankrupt corporation had been prejudicially influenced in its course of action by the defendant's representations or promises; and that, on the contrary, the indications were that the only effect of the defendant's promises had been to increase the resources of the corporation through subscriptions to the new stock, which had been secured upon the strength of them.

The sole office of an estoppel is to protect one from a loss which, but for the estoppel, he could not escape; it was never intended as a means to secure a positive gain.

Submitted on briefs April 8th—decided June 13th, 1913.

ACTION to recover damages for the breach of an alleged stock-subscription agreement, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.*; by direction of the court the jury returned a verdict for the defendant, and from the judgment thereon the plaintiff appealed. *No error.*

The plaintiff is the trustee in bankruptcy of the Grand Opera House Company, Incorporated. Prior

to August 1st, 1909, this corporation, acting under corporate authority, voted to issue $10,000, par value, of preferred stock. Anticipating this action, the corporation employed one Dayton, as a broker, to market the stock thus to be issued, agreeing to give him for his services a retainer of $100 and ten per cent. commission on all stock sold by him.

Shortly after the making of this agreement and before any stock was disposed of, the defendant, being a man of large means, a stockholder in and large creditor of the corporation, told Dayton, and also the president and secretary of the company, that he would take all of said issue of stock for which he (Dayton) could not obtain other subscribers. He also authorized Dayton to tell this to any prospective subscriber. Dayton told prospective purchasers of this agreement, and so informed the defendant, who acquiesced in the making of the representations, and repeated his statement previously made. In consequence of said representation communicated to prospective purchasers by Dayton, the latter obtained several subscriptions.

Dayton procured signed subscriptions for about $1,500 of the stock, on which he received his ten per cent. commission. In the latter part of August, 1909, he abandoned all attempts to obtain further subscriptions, and did not even approach a second time persons who had told him they would subscribe.

Dayton never asked the defendant to subscribe for any of the stock, nor offered any stock to him, nor claimed any commission thereon. The only claim made upon the defendant, with respect to said stock, was made by the plaintiff as trustee in bankruptcy, who, after his qualification, made demand upon the defendant that he pay the amount due upon his subscription, which demand was refused.

The defendant personally had nothing to do with

said issue of .stock. The inability to float it resulted in the bankruptcy of the corporation, and the appointment of the plaintiff as trustee in bankruptcy in June, 1910, or about that time.

*Clarence W. Bronson*, for the appellant (plaintiff).

*William A. Wright*, for the appellee (defendant).

PRENTICE, C. J. The plaintiff, trustee in bankruptcy of a corporation, sues to recover the par value of a certain number of shares of a new issue of its stock, for which it is alleged that he agreed he would subscribe, but refused to take and pay for. The complaint, in a later paragraph, treats this agreement as a subscription, and demands for its breach "the amount due upon said subscription." The evidence discloses nothing which tends to establish a subscription. The utmost that can be claimed from it is that it established a promise to subscribe in the future. The distinction is one of importance. A subscription for an issue of stock of a corporation, already organized, when accepted, makes the subscriber a stockholder, and liable to calls for the full amount subscribed. A contract to subscribe in the future, on the other hand, does not make one a stockholder. It is executory in its character, and looks to the future for its consummation by a subscription then to be made. Each form of contract may create a valid obligation; but the obligations created are clearly distinguishable both as to their inherent character and the remedy for breach. 2 Clark & Marshall on Corporations, § 438.

Assuming, without decision, that the defendant's statements to Dayton and others, either by themselves or through the operation of an estoppel, were sufficient to create a binding obligation on the defendant's part

to do what he said he would do, it nevertheless appears that his undertaking to make a subscription in the future was not an absolute one, but one upon a condition necessarily to be implied from the circumstances. Dayton had been employed for hire by the corporation to market the new issue. The defendant's statements that he would take the balance of the stock, for which Dayton could not obtain other subscribers, were made in view of this employment, and clearly involved the implied condition that Dayton should use all reasonable efforts to make sales to other persons. His undertaking was to take such shares and such only as should remain undisposed of after such efforts had been made. They were not made. Within about a month from the date of Dayton's employment he abandoned all further efforts to obtain additional subscriptions even with those who had told him that they would subscribe. The condition precedent to the defendant's obligation to subscribe was thus never satisfied, and no obligation to subscribe, therefore, ever came into existence.

The plaintiff appeals to the doctrine of estoppel in support of his right to recover. In so far as an estoppel is asserted to preclude the defendant from denying an obligation to do as he represented he would do, we have given the plaintiff full benefit of it. As it does not appear that he failed to do as he represented, there is no foundation for a further estoppel. Furthermore, there can be no further estoppel in favor of the plaintiff, since there is nothing to indicate that the corporation changed its position, or did, or omitted, any act whatsoever to its injury which it would not otherwise have done, or omitted, or was in any way misled to its prejudice by reason of the defendant's representations. *Fawcett* v. *New Haven Organ Co.*, 47 Conn. 224, 227; *Aetna Nat. Bank* v. *Hollister*, 55 Conn. 188, 213, 10 Atl. 550. It would doubtless have been benefited had the de-

fendant taken the unsold balance of the stock, and his failure to do so may have prevented the avoidance of financial difficulties, but that the corporation in its course of action was in any way prejudicially influenced by the defendant's representations or promises, does not appear. The indications rather are that their only effect upon it was to increase its resources through subscriptions to the new stock, which Dayton secured upon the strength of them. It is now sought to supplement the assets thus obtained by adding to them a considerable sum which the corporation never had and which it vainly tried to get from other sources than the defendant. "An estoppel was never intended to work a positive gain to a party, but its whole office is to protect him from a loss which but for the estoppel he could not escape." *Townsend Savings Bank* v. *Todd*, 47 Conn. 190, 219.

There is no error.

In this opinion the other judges concurred.