FIRST NATIONAL BANK OF PARK RIDGE, NEW JERSEY, *vs.* EDWARD W. BRODER.

First Judicial District, Hartford, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The jury might reasonably have found the following facts: The defendant, an attorney at law, commenced an action in behalf of C against P upon several promissory notes, one of which was in the possession of the plaintiff bank in New Jersey, having been deposited with it by C as collateral for indebtedness. The plaintiff, which in the meantime had recovered a judgment in New Jersey against C and had retained K, a Hartford attorney, to collect it in this State, agreed with the defendant to forward the note in question to him whenever he should require it for

use in his action against C, provided the plaintiff should receive the proceeds to be applied upon the obligations of C to it. When that time arrived, K, who was then in possession of the note, delivered it to an agent of the defendant, taking a receipt which provided for its surrender to K after the trial of C's action against P. This trial was avoided by a settlement with P's administrator (P having died) whereby, in consideration of certain cash payments and the transfer of certain shares of stock, C agreed to surrender all of P's notes except the one in question, which was to be turned over at a later date when the administrator was to make either a payment in cash or a transfer of additional shares of stock then held by a third party. When the terms of the settlement were fixed, K, who had by this time prosecuted his action against C upon the New Jersey judgment to a successful conclusion, was called into conference and received from P's administrator a check in satisfaction of the plaintiff's claim. At the same time the defendant, according to the evidence offered by him, produced the note in question and handed it to C with the remark that it now belonged to him, to which K made no objection. Later when K learned for the first time that the plaintiff claimed the right to possession of the note as collateral for additional indebtedness, he made demand for its return on the defendant, to whom C had given it after the conclusion of the settlement; and, upon the defendant's refusal to comply, the present action for conversion was instituted. The trial court directed the jury to return a verdict for the plaintiff for nominal damages only. *Held:*

1. That, while the complaint could be construed as setting forth a cause of action for breach of contract, as well as for conversion, it would be treated on the latter theory by this court, as it had been by the parties.

2. That the plaintiff was not estopped to maintain the present action by its receipt and retention of the payment made to it, since the continued possession of the note by the defendant or by C was in no way inconsistent therewith, and since neither of them had been misled or influenced by the plaintiff's conduct.

3. That whether the conduct of the defendant in handing the note to C at the time of the conference was a conversion of it in violation of his obligations as a bailee for a special purpose, and upon an agreement to return it to the plaintiff when that purpose was accomplished, was dependent upon the question whether K had ostensible authority to give the plaintiff's consent to such an arrangement and whether he had, by his silent acquiescence, exercised that authority; that this question was peculiarly one of fact for the jury's determination and, had the case stopped at that point, its removal from their consideration would have been

erroneous; but that the subsequent conduct of the defendant when, having again received the note from C as his bailee and not as bailee of the plaintiff, he refused to recognize the superior right of the plaintiff to its possession, was unquestionably a conversion which justified the action of the trial court in directing a verdict against him.

4. That the plaintiff's application to the trial court in the action of C against P for an order directing the return of the note—an order which the court was powerless to make since the note had not become an exhibit in the case—was not an election of remedies precluding the maintenance of the present action.

5. That the defendant was in no position to avail himself of the rule that an agent or bailee upon whom demand for an article is made by some one other than the principal or bailor, may retain possession for such time as will permit him to make a reasonable investigation of the rights of the parties.

6. That the general rule which permits one having only a special property in an article to recover its full value upon its conversion is subject to an exception where the action is brought against the general owner or, as in the present case, against one in privity with him; that the measure of the plaintiff's damage was the amount of the indebtedness for which it was holding the note as security; and that, since the trial court had erroneously excluded evidence offered by the plaintiff as to such amount, it was entitled to a new trial upon the issue of damages.

Argued October 5th, 1927—decided May 4th, 1928.

ACTION to recover damages for the conversion by the defendant of a promissory note, alleged to be the property of the plaintiff, brought to the Superior Court in Hartford County and tried to the jury before *Marvin, J.;* the court directed a verdict for the plaintiff for $1 damages, and from the judgment entered thereon both parties appealed. *Error upon plaintiff's appeal, and a new trial ordered limited to the assessment of damages; no error upon defendant's appeal.*

*John Drewen,* of Jersey City, New Jersey, with whom was *Edward H. Kelly,* for the appellant (plaintiff).

*John C. Blackall,* for the appellant (defendant).

MALTBIE, J.   This action was brought to recover damages on account of the failure of the defendant to return to the plaintiff a certain note made by one Pratt to one Chamberlin, to which the plaintiff claims title. On the trial the court directed the jury to bring in a verdict for the plaintiff to recover $1 damages and both parties have appealed, the defendant claiming that the direction to the jury to find for the plaintiff was erroneous, and the plaintiff claiming that the direction that the verdict be only for nominal damages was erroneous and also that the court committed error in striking out certain testimony.   Most of the facts were not in dispute, such material conflicts of evidence as there were being hereinafter noted.   In substance, the case made upon the evidence was this:

The defendant, a practicing attorney in Hartford, in May, 1924, brought an action in behalf of Chamberlin against Pratt on several notes aggregating in all $25,000.   Subsequently Pratt died and the Hartford-Connecticut Trust Company as administrator upon his estate was substituted as defendant.   One of these notes, for $5,000, was being held by the plaintiff in New Jersey.   The plaintiff had recovered a judgment against Chamberlin in New Jersey, upon some claim not appearing upon the record, and had retained E. H. Kelly, a lawyer also practicing in Hartford, to bring an action upon that judgment in Connecticut.   In January, 1925, Kelly did bring such an action, causing a foreign attachment to be made upon any indebtedness of the Trust Company as administrator of the Pratt estate to Chamberlin.   The defendant appeared for Chamberlin in this action.

The note was, in December, 1924, in the possession of the plaintiff in New Jersey, being held as collateral for indebtedness of Chamberlin to it.   December 8th, 1924, Perkins and Drewen, attorneys for the plaintiff in New

Jersey, wrote the defendant a letter in which they referred to a telephone message from his office in Hartford as to the note; said they were enclosing a copy of it, and that the plaintiff was willing to do whatever would assist Chamberlin in realizing the amount due upon it; promised that, if they were advised when it was necessary for the defendant to have the original, it would be produced; and then went on to say that it was the writers' understanding from conferences with Chamberlin's attorneys in New Jersey that he would make proper assignment to the plaintiff "to the end that the bank will receive whatever moneys are realized on this note, the same to be applied, in part, to obligations now had by Mr. Chamberlin to the bank."

Matters then went along until May, 1925, when judgment for the plaintiff to recover $2,672.87 was rendered in the action brought against Chamberlin upon the judgment, and about the same time Chamberlin's suit against the Trust Company as administrator was assigned for trial. Kelly, who had come into possession of the note, thereupon delivered it to an attorney associated with and acting for the defendant, for the purpose of its use in the trial of the action of Chamberlin against the Trust Company, taking a receipt which described the note, stating, "said note now being held by First National Bank, Park Ridge, N. J., as collateral for indebtedness of A. B. Chamberlin," and concluded: "Also recd. of E. H. Kelly accompanying notice of protest, and collection memo, all to be returned to E. H. K. when said trial is finished."

Chamberlin's action against the Trust Company as administrator was not tried, but negotiations were begun at the court house for a settlement, and later the parties to that action and their attorneys met in the office of the Trust Company. An agreement was finally reached, by the terms of which $7,500 was to be paid

in cash and certain shares of stock delivered to Chamberlin in return for the surrender of all the Pratt notes except the one here in suit; as to that, the agreement was that if the Trust Company could secure, by suit if not by voluntary surrender, certain shares of stock held by one Rockwell, it would deliver them to Chamberlin, who would surrender the note, and, if these shares could not be obtained, then the Trust Company would pay Chamberlin $2,671.81, and certain additional interest, and thereupon the note would be surrendered. The terms of the settlement having been agreed upon, Kelly was called into conference, and was given a check by the representative of the Trust Company for the amount of the judgment rendered in the action of the plaintiff against Chamberlin. As to the incidents following there is some conflict of testimony. The defendant testified that, in Kelly's presence, he pushed the notes other than the one here in suit, across the table to the representative of the Trust Company; that he pushed the note here in suit over to Chamberlin, saying to Kelly, "This note, now you have this check, belongs to Mr. Chamberlin"; and that Kelly made no objection to Chamberlin's taking it. That the note in suit was specifically called to his attention at this conference, Kelly denies. Chamberlin later that day delivered the note again to the defendant with his copy of the agreement of settlement.

Kelly sent the sum received by him to Perkins and Drewen, except for the amount of the fee retained by him. Within a day or two thereafter he received instructions from them to return the note, as it was held as collateral for other indebtedness of Chamberlin to the plaintiff. This was the first information that Kelly had that there was any indebtedness of Chamberlin to the plaintiff other than that included in the judgment he had secured. Kelly at once demanded the note of

the defendant, telling him of the information he had received from Perkins and Drewen as to its being held as collateral for other indebtedness. The defendant replied that he must consult Chamberlin about the matter, but two or three days later wrote Kelly that in view of the settlement in the office of the Trust Company and the delivery of the note to Chamberlin at that time, it would be impossible for him to comply with Kelly's request for its return. Thereafter Kelly sought an order of the Superior Court, in the action of Chamberlin against the Trust Company, that the defendant deliver the note to him, alleging it to be an exhibit in the case. The court granted the application; but subsequently its order was modified to provide that the note should be returned if and when the plaintiff established its right to it. No proceedings were thereafter brought by the bank to secure the note itself, but instead the present action was begun.

The complaint alleges that the plaintiff was the holder of the note for value, that it was delivered to the defendant under the terms of the receipt given to Kelly to which reference has been made, that the action of Chamberlin against Pratt was settled without trial, and that, though many times requested, the defendant has refused and still refuses to return the note and the accompanying papers to the plaintiff or its attorney. While these allegations might justify a claim of damages for breach of contract, all the elements necessary to constitute a conversion of the note are alleged, the distinction between the two causes of action is not of practical moment in this case, and the parties have largely argued it before us upon the basis of a claimed conversion. We shall so treat it. *Metropolis Mfg. Co.* v. *Lynch,* 68 Conn. 459, 470, 36 Atl. 832.

The defendant claims that the plaintiff, by its

receipt and retention of the money paid Kelly at the time of the settlement, was estopped to question the right of the defendant to take the note. But the mere possession of the note by the defendant or his principal, Chamberlin, at the time it was delivered and thereafter when demand for it was made by Kelly, was not necessary under the terms of the settlement. That agreement contemplated an attempt to secure possession of certain stock, with the likelihood of an action at law, before the Trust Company would be entitled to demand the note, an attempt which obviously would take some time. While the note would have to be forthcoming eventually in order to carry out the agreement, there was no reason why, so far as the defendant and Chamberlin were concerned, in the interval the plaintiff should not retain it. The defendant and his client Chamberlin could rely upon the promise of the plaintiff contained in the letter from Perkins and Drewen to have it forthcoming when needed, or upon the right to secure it by paying the sums to secure which it was held by the plaintiff. It could not be said therefore that the making of the agreement was in any way dependent upon possession of the note by the defendant or Chamberlin. There was no inconsistency in the plaintiff's retention of the money, though it came from the settlement, and its demand for possession of the note. Moreover, it is clear upon the undisputed facts that the payment to the bank was made by reason of the foreign attachment served upon the Trust Company and that it had nothing to do with the making of the agreement; had Kelly been apprised of the fact that the note was held as collateral for other indebtedness, he no doubt would have demanded and received both note and money, and the agreement of settlement would have remained unaffected. The defendant and his client Chamberlin clearly were not

led into the making of the agreement by any conduct of the plaintiff such that inequity would result if it succeeded in its present claim. *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 Atl. 277; *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 500, 136 Atl. 78. Hence the plaintiff was not estopped to prosecute its present action.

If the defendant was guilty of a conversion of the note, it was by reason either of his pushing the note over to Chamberlin at the time of the settlement, or of his refusal to deliver it to Kelly on his demand after it had been returned to the defendant by Chamberlin. As regards the first, the defendant had held the note as a bailee for the plaintiff, for a special purpose, under an agreement to return it when that purpose was accomplished. By his conduct in pushing the note over to Chamberlin he repudiated that relationship to the note, assumed dominion over it and gave possession of it to the one who, as against the plaintiff, was peculiarly without right to it. Unless the defendant or his client Chamberlin then had a right to the possession of the note, this would clearly be a conversion of it. *Mills* v. *Britton,* 64 Conn. 4, 26, 29 Atl. 231; *Metropolis Mfg. Co.* v. *Lynch,* 68 Conn. 459, 470, 36 Atl. 832; *Healey* v. *Flammia,* 96 Conn. 233, 235, 113 Atl. 449; Bowers on Conversion, §87. That he was acting as an attorney and not in his own right would be no defense. *Semple* v. *Morganstern,* 97 Conn. 402, 404, 116 Atl. 906. No demand for the return of the note would be necessary to constitute the conversion. *Coleman* v. *Francis,* 102 Conn. 612, 129 Atl. 718.

The letter from Perkins and Drewen to the defendant in reference to the note was merely an offer to have it forthcoming at some future time, and was expressly conditioned upon an assignment by Chamberlin to the plaintiff which would enable it to receive any moneys realized, a condition which was never met.

Prior to the settlement of the action of Chamberlin against the Trust Company, and the incidents then occurring, the only right the defendant had to the possession of the note was by virtue of the terms of the receipt given Kelly when he delivered it to the defendant's agent. By the terms of that receipt the note and accompanying papers were to be returned to Kelly when the trial of the action was finished. That certainly gave the defendant no right to retain the note after the consummation of the settlement of the case. Whatever rights to its possession he thereafter had must depend upon the circumstances attending and following that settlement.

In the determination of the defendant's rights upon his appeal from the direction of the verdict against him, such facts as were supported by the evidence he offered, with all favorable inferences from them, are to be regarded as though established. We must therefore assume that he did at the time of the settlement say to Kelly, as he pushed the note over to Chamberlin, "This note, now you have the check, belongs to Mr. Chamberlin," and that Kelly gave his silent assent. No claim is made that Kelly had express authority to give this consent. Whether or not the defendant was entitled to rely upon ostensible authority in him to do so presented an issue of fact, depending for its solution upon a consideration of the relevant circumstances of the case. *Quint* v. *O'Connell,* 89 Conn. 353, 357, 94 Atl. 288. As indicative of the defendant's justification in claiming a right to rely upon such ostensible authority, Kelly's own belief that he had authority to surrender the note has much significance. Had the defendant's connection with the note stopped there, we could not have avoided the conclusion that the trial court should have submitted the issue of ostensible authority to the jury.

But when the note was returned by Chamberlin to the defendant a very different situation was presented. Had the defendant, in reliance upon an ostensible authority in Kelly to surrender the note, so acted with reference to it that he would suffer loss or incur liability if that authority were denied, he might be entitled to protection. But all he did was to deliver it to Chamberlin, and, as against the plaintiff, Chamberlin had no right in fact to retain it, and, because of the knowledge which it must be assumed he had of his own dealings with the plaintiff and of the fact that the note was held also as collateral for indebtedness aside from the judgment sued upon, he was in no position to make any claim of ostensible authority in Kelly to surrender it. After it was returned to the defendant by Chamberlin, the former occupied a very different relationship to it than he had done before the settlement. Then he held it, in part at least, as bailee for the plaintiff; after its return to him he held it solely as bailee for Chamberlin. When Kelly demanded it, the defendant found himself in the not unusual and usually unenviable position of a bailee upon whom demand for the article bailed has been made by one claiming a higher title to it. The defendant, as we have suggested, had at least some justification for believing that Kelly had authority to surrender the note at the time of the settlement; and the defendant had a responsibility to protect the interests of his client. While we can recognize his hard position, the motives which doubtless moved him to refuse to surrender the note and the lack of any bad faith on his part in retaining it, we are not justified thereby in relaxing the rules of law upon which his liability in this action must be determined.

As regards the order of the court that the defendant retain the note until the plaintiff establish its title to

it, it is to be noted that the case of Chamberlin against the Trust Company never came to trial and the note was never offered in evidence. Whatever may be the situation where a document has been made an exhibit in evidence, the court cannot in so summary a fashion determine the right of possession as to one which has never in any way come into its possession. As has been pointed out, the conversion of the note, if there was one, took place either when the defendant pushed it over to Chamberlin at the time of the settlement, or when thereafter the defendant refused Kelly's demand for its return. The plaintiff's right to damages had accrued before the court order was made, and the successful pursuit of that right in the present action would in no way put the defendant in a position of disobedience to the order of the court, which was concerned solely with the possession of the note itself. So abortive an attempt on the plaintiff's part to get possession of it would not constitute such an election of remedies as would preclude the present suit. *Abbadessa* v. *Puglisi,* 101 Conn. 1, 6, 124 Atl. 838. The order of the court is no defense to this action.

While there may be circumstances which justify an agent or bailee in retaining possession for a time of an article to which a person other than the principal or bailor asserts title, yet that right goes no further than to permit the agent or bailee to keep the article until he can make reasonable investigation as to the rights of the parties; if, as in the present case, he makes no inquiry but, when action is brought after the lapse of some months, he sees fit to rely upon the right of himself or another to the possession of the article, the rule affords him no protection; and, if the party making the demand has the superior title, he will be liable for its conversion. *Hartford Ice Co.* v. *Greenwoods Co.,* 61 Conn. 166, 169, 23 Atl. 91; *Ball* v. *Liney,*

48 N. Y. 6, 12; *Wykoff* v. *Stevenson,* 46 N. J. L. 326, 328; *Dowd* v. *Wadsworth,* 13 N. C. 130, 134; *Singer Mfg. Co.* v. *King,* 14 R. I. 511, 512; 1 Mechem on Agency (2d Ed.) §1457; Dobie on Bailments, p. 42. It follows that upon the undisputed facts the defendant was guilty of a conversion of the note when he refused to deliver it to Kelly upon his demand, if not before, and that the action of the trial court in directing a verdict for the plaintiff was correct. There is no error upon the defendant's appeal.

Turning to the appeal of the plaintiff, the ordinary rule of damages for the conversion of a note is its actual value, but, prima facie, its face value is taken as that actual value, leaving the burden of proof upon the defendant to establish facts showing that not to be true in the particular case. *Healey* v. *Flammia,* 96 Conn. 233, 237, 113 Atl. 449. In the instant case, however, it is undisputed that the plaintiff was not the owner of the note, but held it merely as collateral to secure indebtedness owed to it by the defendant's client, Chamberlin. To the rule which permits one having only a special property in an article to recover its full value upon its conversion, there is an exception where the action is brought against the general owner or one in privity with him. *White* v. *Webb,* 15 Conn. 302, 305; 1 Sutherland on Damages (4th Ed.) §139. At the time the suit was brought, the defendant was holding the note in his capacity of attorney for Chamberlin, the debtor to the plaintiff, and was in privity with him within this principle. If in the instant case the plaintiff had a right to recover damages at all, the amount of the indebtedness owing to it for which it was holding the note as security, would be the measure of recovery. *Continental Credit Co.* v. *Ely,* 91 Conn. 553, 562, 100 Atl. 434. Evidence was offered upon the issue so presented, but was stricken out by the court,

and the situation was such that the plaintiff had no basis upon which to go to the jury upon the issue of substantial damages; hence its appeal from the direction of the verdict for nominal damages alone cannot be sustained. But in its additional appeal it relies upon the striking out of this evidence and that was clearly error.

There is error upon the plaintiff's appeal, and a new trial is ordered limited to the assessment of damages; there is no error upon the defendant's appeal.

In this opinion the other judges concurred.