TRADESMENS NATIONAL BANK OF NEW HAVEN *vs.* WALDO H. MINOR ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 5th—decided February 4th, 1937.

*Alexander Winnick,* with whom, on the brief, was *Max H. Schwartz,* for the appellants (defendants).

*John Clark FitzGerald,* with whom was *Samuel J. White,* and, on the brief, *David E. FitzGerald* and *David E. FitzGerald, Jr.,* for the appellee (plaintiff).

BROWN, J.  In this action to foreclose a mortgage for $7000 upon real estate in North Haven, the following undisputed facts are established by the finding: June 15th, 1933, the plaintiff by assignment became the owner of a debt due from the defendant husband on two notes, secured by certain stock pledged as collateral and by the $7000 mortgage here sued on, which had been given as additional collateral. The stock was indorsed over by him to the plaintiff, and the mortgage was assigned to it together with the two notes. June 25th, 1933, this defendant executed a new demand note to the plaintiff in collateral note form for $17,624.06, in lieu of these two original notes, this being the amount then due. During April, 1934, with the defendants' approval, the plaintiff converted certain of the stock held as collateral into other issues with a higher income yield, and continued as it had before to apply the dividends against the interest on the indebtedness. April 19th, 1934, the defendant husband quitclaimed the mortgaged real estate to the defendant wife.

Pursuant to an agreement with her, but made without consideration, the plaintiff, to help the defendant husband carry his loan, on or about February 1st,

1935, reduced the interest rate to 5 per cent., and after that date sold more of the collateral, and purchased with the proceeds higher yield stocks, crediting a balance of $88.45 to interest on the loan. As of March 1st, 1935, there was due the plaintiff from the defendant husband $17,624.06. Interest thereon at 5 per cent. per annum totaled $871.50, while the annual dividend yield on the collateral then held by the plaintiff amounted to $800.00. March 13th, 1935, the plaintiff's cashier gave the defendant wife a memorandum showing these interest figures and the shares held by the plaintiff as collateral. The plaintiff, its officers and directors, were cognizant of the conversion of collateral by the sales and purchases above narrated.

From the time that the plaintiff acquired it, the account had not been in good condition, and the dividends on collateral credited were insufficient to cover the interest on the loan. Prior to March 16th, 1935, the bank examiner had criticised the account and classified it in the "doubtful" column, and the plaintiff's president recommended to its board of directors that the collateral be sold, since the loan was "under water" and should not be continued in an unbankable condition. This the board ordered done. Accordingly, of the stocks purchased by the plaintiff from the proceeds of the collateral sold in 1935 as above stated, on March 16th, 1935, the plaintiff sold a lot of twenty shares within eleven days after such purchase thereof, and similarly ten shares within twenty-one days, twenty-five shares within one month, and on April 29th, 1935, thirty shares within about two months, all of the proceeds being applied to the reduction of the loan. The plaintiff computed interest on the original indebtedness only and not upon the note secured by the mortgage. The debt at the date of judgment was

$7568.38 and the market value of the property foreclosed, the only remaining collateral, was $3500.

The further finding by the court that the plaintiff's president telephoned the defendant husband that his stock was to be sold because of the unbankable condition of his account, is attacked by the defendants' assignment of errors, first, because the time of this notice is not found to have been early in February prior to the conversion of the collateral, and second, because as found it is not supported by the evidence. The testimony of the witnesses Smith and Kirkman is sufficient to support the finding as made, without the qualification as to time urged by the defendants. The same is true of the further facts found in this connection not attacked by the assignments of error, that the plaintiff's president by this telephone conversation made clear to the defendant husband that the collateral must be sold unless the loan was put in shape, that neither he nor the defendant wife as his agent made any attempt to do this, but on the contrary they failed even to consult with the plaintiff's officers at all, until shortly before April 29th, 1935, when but thirty-five shares of the collateral remained unsold. The defendants are entitled to no material correction of the finding.

The only other errors assigned which the defendants rely upon, are the court's overruling of their claims that: (1) the plaintiff had "failed to act equitably in its relations with the defendants and hence was not properly before a court of equity," and (2) the plaintiff was "estopped from foreclosing the instant mortgage by virtue of its conduct and representations to the defendant, Mabel P. Minor, concerning the conversion of the stock of the defendant, Waldo H. Minor." In support of their first claim the defendants rely upon the equitable maxim that he who

seeks equity must do equity, their contention being that the plaintiff having failed to accord to them all of the equitable rights to which they are entitled with respect to the subject-matter, it should be denied relief in this equitable action of foreclosure. 21 C. J. p. 174, § 152. More specifically, their contention is that the reduction of the interest rate on the loan to 5 per cent. on February 1st, 1935, followed by the conversion of the stock into other issues with a higher yield, all pursuant to the defendant wife's agreement with the plaintiff's cashier Smith, and his delivery to her on March 13th, 1935, of the memorandum showing the net balance to be paid above the dividends anticipated under this arrangement to be $71.50, led the defendants to reasonably infer that the plaintiff would continue to carry the loan, and that therefore the plaintiff, in proceeding to sell all of this stock between March 16th and April 29th following, was guilty of inequitable conduct within the above principle.

As the finding shows, there was no consideration for the agreement between the defendant wife and the plaintiff's cashier, and it was not a binding legal obligation. Nor do the defendants suggest that it was. Neither can they claim upon the facts found that legally the plaintiff had not full right to sell the collateral and apply the proceeds to reduce the debt, for as they state in their brief, the defendant husband "had executed the usual collateral note which entitled and empowered the Bank to sell the collateral at such time as it felt that the defendants' loan was insufficiently secured." The gist of their argument is reduced to this, that the plaintiff acted inequitably in selling the stock as it did "without asking for additional security," "without any notice whatsoever of its intended action," and without affording the defendants any opportunity to make "some efforts or proposals" to satisfy it. The

reasonable interpretation of the court's finding makes clear that this argument fails for lack of the facts essential to support it. The finding further shows that the history and condition of this loan, together with the bank examiner's suggestions regarding it, afforded the plaintiff cogent reasons for adopting the course which it did. Upon this record we cannot say that the court erred in overruling this claim of the defendants. What we have said in this connection applies with like force to the defendants' claim, apparently raised for the first time in its brief on appeal, that the plaintiff has not come into equity with clean hands, and so should be denied relief.

The defendants' second claim, that the plaintiff, by its conduct and representations concerning the conversion of the collateral, is estopped from foreclosing this mortgage, requires consideration of the essentials of an estoppel, and their application to the facts here. We early held that "wherever an act is done or a settlement made by a party which cannot be contravened or contradicted without fraud, or gross misconduct which is akin to it, on his part, and injury to others whose conduct has been influenced by the act or omission, or . . . where a person by his acts or his words intentionally induces another to believe in the truth of a fact and thereby change his situation or commit his interests, the character of an estoppel will attach. . . ." *West Winsted Savings Bank & Bldg. Asso.* v. *Ford,* 27 Conn. 282, 291. In a more recent case we stated: "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done."

*Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227. The essentiality of these elements has been reiterated in many decisions since, of which we cite but a few: *Aetna National Bank* v. *Hollister,* 55 Conn. 188, 213, 10 Atl. 550; *Webb* v. *Moeller,* 87 Conn. 138, 141, 87 Atl. 277; *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 501, 136 Atl. 78; *Basak* v. *Damutz,* 105 Conn. 378, 383, 135 Atl. 453; *First National Bank* v. *Broder,* 107 Conn. 574, 582, 141 Atl. 861; *Myers* v. *Burke,* 120 Conn. 69, 73, 179 Atl. 88; *O'Connor* v. *Metropolitan Life Ins.* Co., 121 Conn. 599, 610, 186 Atl. 618.

The court's finding fails to disclose the existence of either of these essentials here. It can hardly be reasonably inferred merely from what it states as having transpired between the defendant wife and the plaintiff's cashier Smith, that that was calculated to induce the defendants to believe the loan was to be allowed to stand and to act on this belief. Even though this first essential could be deduced, the finding is entirely silent as to any change of position or act done to their injury which the defendants otherwise would not have indulged in. In fact, so far as appears, if given an opportunity to make arrangements in regard to the loan, the defendants were in no position to avail themselves of it. This precluded even the possibility of their being misled into acting differently than they otherwise would have. The court did not err in overruling the defendants' claim of estoppel. *Boucher* v. *Godfrey,* 119 Conn. 622, 629, 178 Atl. 655.

There is no error.

In this opinion the other judges concurred.